Glenn R. Kantor, SBN 122643
Email: gkantor@kantorlaw.net
Peter S. Sessions, SBN 193301
Email: psessions@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff
REBECCA HAAG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA HAAG,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>        Defendant. | Case No. 3:22-cv-03130 TSH<br><br><br>**PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF**<br><br><br>**Date:  May 11, 2023** |

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................... 2

    A.      The Policy Definition of Disability .............................................................. 2

    B.      Ms. Haag's Employment and Medical History .......................................... 2

    C.      Ms. Haag Submits Her LTD Claim to Unum ............................................ 5

    D.      Unum Approves Ms. Haag's LTD Claim, But Only for a Limited
        Time Period ................................................................................................ 10

    E.      Ms. Haag Appeals ..................................................................................... 10

    F.      Unum Upholds Its Denial Decision on Appeal ........................................ 12

III.    POINTS AND AUTHORITIES ............................................................................ 13

    A.      The Standard of Review Is De Novo ........................................................ 13

    B.      Under De Novo Review, the Preponderance of the Evidence Demonstrates
        that Ms. Haag Was Disabled and Entitled to LTD Benefits ..................... 14

        1.      The Record Demonstrates That Ms. Haag Suffered from Back,
            Hip, and Leg Pain ......................................................................... 14

        2.      Ms. Haag Was Unable to Perform the Duties of Her Regular
            Occupation .................................................................................... 17

        3.      Ms. Haag Is Credible .................................................................... 19

        4.      Unum's Medical Review Is Entitled to Little Weight ................... 21

IV.     CONCLUSION ..................................................................................................... 25

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Cases**

*Armani v. Northwestern Mut. Life Ins. Co.*,
   840 F.3d 1159 (9th Cir. 2016)..................................................................................18

*Backman v. Unum Life Ins. Co. of Am.*,
   191 F. Supp. 3d 1053 (N.D. Cal. 2016) .............................................................19-20

*Barteau v. Prudential Ins. Co. of Am.*,
   2009 WL 1505193 (C.D. Cal. May 26, 2009) ........................................................15

*Bennett v. Kemper Nat. Servs., Inc.*,
   514 F.3d 547 (6th Cir. 2008).....................................................................................21

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822, 123 S. Ct. 1965, 155 L.Ed.2d 1034 (2003) .......................................19

*Boersma v. Unum Life Ins. Co. of Am.*,
   546 F. Supp. 3d 703 (M.D. Tenn. 2021) ...................................................................22

*Boykin v Unum Life Ins. Co. of Am.*,
   2022 WL 458213 (E.D. Cal. Feb. 15, 2022).........................................................22-23

*Calvert v. Firstar Fin., Inc.*,
   409 F.3d 286 (6th Cir. 2005).....................................................................................20

*Carney v. Unum Life Ins. Co. of Am.*,
   596 F. Supp. 3d 845 (E.D. Mich. 2022).....................................................................23

*Carradine v. Barnhart*,
   360 F.3d 751 (7th Cir. 2004).....................................................................................20

*Chicco v. First Unum Life Ins. Co.*,
   2022 WL 621985 (S.D.N.Y. 2022)............................................................................22

*Christoff v. Unum Life Ins. Co. of Am.*,
   2019 WL 4757884 (D. Minn. Sept. 30, 2019) ..........................................................23

*Clark v. Unum Life Ins. Co. of Am.*,
   2018 WL 4931935 (M.D. Tenn. Oct. 10, 2018) ........................................................23

*Demer v. IBM Corp. LTD Plan*,
   835 F.3d 893 (9th Cir. 2016).....................................................................................21

*Dewsnup v. Unum Life Ins. Co. of Am.*,
   2018 WL 6478886 (D. Utah Dec. 10, 2018)..............................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

*Diaz v. Prudential Ins. Co. of Am.*,
    499 F.3d 640 (7th Cir. 2007).................................................................20

*Dwyer v. Unum Life Ins. Co. of Am.*,
    548 F. Supp. 3d 468 (E.D. Pa 2021) ......................................................23

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ..........................13

*Fleming v. Unum Life Ins. Co. of Am.*,
    2018 WL 6133859 (C.D. Cal. 2018)....................................................21-22

*Hannon v. Unum Life Ins. Co. of Am.*,
    988 F. Supp. 2d 981 (S.D. Ind. 2013) ...................................................23

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) ......................25

*Hawkins v. First Union Corp. Long-Term Disability Plan*,
    326 F.3d 914 (7th Cir. 2003) ................................................................19

*Kearney v. Standard Ins. Co.*,
    175 F.3d 1084 (9th Cir. 1999) (en banc ..............................................13-14

*McOsker v. Paul Revere Life Ins. Co.*,
    279 F.3d 586 (8th Cir. 2002)................................................................15

*Olis v. Unum Life Ins. Co. of Am.*,
    2020 WL 4380948 (C.D. Cal. 2020).......................................................21

*Oliver v. Coca Cola Co.*,
    497 F.3d 1181 (11th Cir.)......................................................................19

*Opeta v. Northwest Airlines Pension Plan for Cont. Emps.*,
    484 F.3d 1211 (9th Cir. 2007) ..............................................................14

*Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*,
    856 F.3d 686 (9th Cir. 2017) ................................................................14

*Perryman v. Provident Life & Acc. Ins. Co.*,
    690 F. Supp. 2d 917 (D. Ariz. 2010)......................................................19

*Rios v Unum*,
    2020 WL 7311343 (C.D. Cal. 2020).......................................................23

*Roehr v. Sun Life Assurance Co. of Canada*,
    21 F.4th 519 (8th Cir. 2021) .............................................................15-16

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

iii

*Saffon v. Wells Fargo & Co. Long Term Disability Plan,*
    522 F.3d 863 (9th Cir. 2008) ................................................................. 15

*Salomaa v. Honda Long Term Disability Plan,*
    642 F.3d 666 (9th Cir. 2011) ................................................................. 19

*Snapper v. Unum Life Ins. Co. of Am.,*
    2023 WL 2539242 (N.D. Ill. Mar. 16, 2023) ....................................... 22

*Tam v. First Unum Life Ins. Co.,*
    491 F. Supp. 3d 698 (C.D. Cal. 2020) ..............................................21-22

**Statutes**

29 U.S.C. § 1132(g) ................................................................................ 25
29 U.S.C. § 1144(b)(2)(A) ...................................................................... 14
29 U.S.C. § 1001 ....................................................................................... 1
California Insurance Code Section 10110.6 ............................................ 14

**Regulations**

29 C.F.R. § 2560.503-1(h)(3)(iii) ........................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

1

## I.   **INTRODUCTION**

2      This is an action for long-term disability ("LTD") benefits by plaintiff Rebecca Haag under

3    an employee benefit plan governed by the Employee Retirement Income Security Act of 1974, 29

4    U.S.C. §§ 1001 *et seq.* ("ERISA"). Ms. Haag was employed by Huntington Memorial Hospital,

5    whose LTD employee benefit plan was insured by a group policy (the "Policy") issued by

6    Defendant Unum Life Insurance Company of America ("Unum").

7      As explained in detail below, Ms. Haag was working as a clinical lab scientist in 2018

8    when she began to suffer from back, hip, and leg pain. By August of 2019, Ms. Haag's pain was

9    so intense that she was forced to stop working. She attempted to return to work in October of

10   2019, but she soon had to cut back her hours, and then stop working entirely on January 1, 2020.

11   During this time, Ms. Haag underwent physical therapy, a steroid injection, and eventually had a

12   lumbar microdiscectomy on January 30, 2020.

13     However, the discectomy was unsuccessful in relieving Ms. Haag's long-term pain. She

14   submitted a claim for LTD benefits to Unum, and although Unum agreed that Ms. Haag was

15   entitled to some benefits, it ultimately determined that three months was sufficient to recover from

16   the surgery, and only paid benefits for that time period. Unum dismissed Ms. Haag's continuing

17   complaints of pain as unsupported.

18     This decision was incorrect. The record shows that the discectomy did not relieve Ms.

19   Haag's pain, and this was because the true cause of her pain was a labral tear in her hip, which was

20   surgically corrected in September of 2021. After receiving this surgery, Ms. Haag was finally able

21   to return to work. When presented with this evidence, Unum ignored it and denied Ms. Haag's

22   appeal, forcing her to file this action.

23     Ms. Haag's claim is supported by hundreds of pages of medical records from multiple

24   physicians and therapists. Her primary treatment provider consistently informed Unum that Ms.

25   Haag could not return to work because of her ongoing pain, and the record shows that Ms. Haag's

26   credibility is beyond reproach. As a result, the Court should overturn Unum's decision, enter

27   judgment in her favor, and order Unum to pay all benefits due under the Policy.

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

**PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF**

## II.    STATEMENT OF FACTS

### A.    The Policy Definition of Disability

The controlling document in this case is the Unum Policy, which defines disability as follows:

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your regular occupation due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

AR 2660.[1]

Here, Unum terminated Ms. Haag's LTD claim before she had received 24 months of benefits, and thus the first, more lenient, "regular occupation" definition of disability applies.

### B.    Ms. Haag's Employment and Medical History

Rebecca Haag is a 42-year-old woman who received a bachelor's degree in science from Northern Illinois University in 2009 and has worked in scientific and laboratory settings ever since. AR 275-86. She was hired by Huntington Memorial Hospital as a Clinical Lab Scientist on January 12, 2015, and by the time she became disabled she was earning approximately $100,000 per year. AR 5.

Ms. Haag's job required her to perform tests and provide results in accordance with established procedures. She also performed preventive maintenance on equipment and provided training to technicians and trainees. She worked with minimal supervision and coordinated workflow. The physical demands included sitting, standing, and walking on a frequent (up to 2/3 of the time) basis, as well as lifting up to 50 pounds occasionally. AR 76-78.

---

[1] Citations in this brief preceded by "AR" refer to pages of the "administrative record" maintained by Unum. Pursuant to the Court's August 19, 2022 case management order (Doc. 21), Ms. Haag is informed and believes that Unum is lodging this document with the Court.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    Unfortunately, Ms. Haag began developing lower back and hip pain in the fall of 2018.

2    She underwent physical therapy in May of 2019, and told her therapists that her pain "can shoot

3    down into toes. Pain is described as achy or sharp pain…sometimes the pain is so irritating that

4    she needs to call off of work." Ms. Haag stated that her pain went as high as 7-8 out of 10. AR

5    1941.

6    Physical therapy was ineffective. AR 1945 ("The patient reports overall feeling about the

7    same"). On August 2, 2019, Ms. Haag woke up from significant pain. AR 58, 98. Ms. Haag

8    informed her primary care physician, Dr. Marina Manvelyan, on the same day that she was

9    "unable to sleep because of the pain." AR 299. Dr. Manvelyan recommended that Ms. Haag stop

10    working, which she did on August 5, 2019. AR 12.

11    On August 12, 2019, Ms. Haag informed Dr. Manvelyan that pain medication was helping,

12    but the pain she was experiencing "gets aggravated at work, she does have to twist and reach out

13    as part of her job." Ms. Haag felt guilty about calling in sick because her employer was short-

14    staffed. "She is trying to push herself but the pain is just getting worse." AR 301.

15    Dr. Manvelyan referred Ms. Haag to physical therapy and to an orthopedic surgeon, Dr.

16    Ben Pradhan. AR 302, 304. She also referred Ms. Haag for a lumbar MRI, which took place on

17    August 16, 2019. It showed a "3.5 mm central posterior disc protrusion that indents the ventral

18    aspect of the thecal sac." AR 333.

19    Dr. Pradhan began his treatment on August 20, 2019. He noted that Ms. Haag's pain

20    radiated to her lower extremities with numbing, tingling, and weakness. "Her pain is increased

21    with sitting, standing and walking and improved with resting." Dr. Pradhan recommended further

22    physical therapy and stated that he believed Ms. Haag was a candidate for an epidural spinal

23    injection. AR 355, 1130-33.

24    Ms. Haag underwent physical therapy from August 27, 2019 through November 5, 2019.

25    AR 2275-2314. She reported that her pain "has gotten so bad she has not been able to work," and

26    "Symptoms increases with prolonged standing and/or sitting roughly 30 minutes." AR 2275.

27    During her treatment, she reported some improvement and was able to reduce her medication. AR

28    2294.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

3

1    As a result, she attempted to return to work in October of 2019. AR 12. However, her

2 return resulted in an "exacerbation of symptoms." AR 2299. On October 10, 2019 Dr. Manvelyan

3 noted, "Patients [lower back pain] returned soon after returning to work, the patient is in severe

4 pain…patient failed the conservative treatment…needs to stay off work." AR 309-10. Dr.

5 Manvelyan referred Ms. Haag back to Dr. Pradhan for discussion regarding an epidural injection.

6 AR 310.

7    On October 14, 2019, Dr. Pradhan noted that Ms. Haag "has been doing Physical Therapy,

8 but without significant help. She tried to return to work but was unable to bear the pain. Her pain

9 is worse now, going down the right leg." Pradhan recommended continued physical therapy and

10 again stated Ms. Haag was a candidate for injections. AR 356, 1125-28.

11    Because of her ongoing problems, Ms. Haag reduced her work to modified duty on

12 November 7, 2019. AR 12. Dr. Manvelyan completed a return to work note which allowed Ms.

13 Haag to work three days per week, AR 405, but noted in contemporaneous records that "her pain

14 is persistent and patient requires quite a bit of pain meds to control it, she is not ready to return to

15 work and will need more definitive treatment for her pain." Ms. Haag was "stressed about the

16 pain, missing work and about her future with her job[.]" AR 777.

17    On October 28, 2019, pursuant to Dr. Pradhan's recommendation, Ms. Haag underwent a

18 CT-guided transforaminal epidural injection in her spine at L5-S1. AR 528-29. She had a "good

19 response" initially, AR 781, 1122, but by December 13, 2019, "her symptoms came back." AR

20 781. On January 1, 2020, Ms. Haag was forced to stop working again. AR 12, 407.

21    On January 3, 2020, Dr. Pradhan noted, "She is getting worse. At this point, the patient has

22 exhausted all reasonable non-surgical treatment modalities, and has become a surgical candidate."

23 AR 1117.

24    On January 30, 2020, because of Ms. Haag's "intractable radiculopathy," Dr. Pradhan

25 performed a lumbar microdiscectomy and decompression at L5-S1. She was given a lumbosacral

26 brace afterward for support. AR 483-84, 133.

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    On March 9, 2020, Dr. Pradhan recommended that Ms. Haag resume physical therapy, as

2    she had recovered sufficiently from her surgery, although her therapy was suspended after only

3    three sessions due to the COVID-19 pandemic. AR 323, 359, 1104, 1107.

4    When Ms. Haag returned to Dr. Manvelyan on April 24, 2020, she reported that she had

5    right leg pain and "pin and needles" all the way down to her toe, "at times the pain is 6/10." Ms.

6    Haag did "not know what aggravated her pain, she has been following the activity restrictions and

7    doing home stretching exercises." Dr. Manvelyan advised Ms. Haag to "reconsider/postpone" any

8    return to work. AR 323.

9    On April 27, 2020, Dr. Pradhan released Ms. Haag from his surgical care, noting that the

10    incision was healed. He also noted, incorrectly, that "physical therapy is near completion or

11    complete." Follow-up visits would be "as needed." AR 1104.

12    Because Ms. Haag's pain continued, Dr. Manvelyan referred her to a neurologist, Dr.

13    Avriel Linane, who began treating Ms. Haag on May 20, 2020. Ms. Haag reported that she

14    "continues to have back pain, unable to return to work due to tingling in her foot, and deep aching

15    pain down her right side[.]" Ms. Haag's pain had "decreased since surgery, but has not resolved.

16    She feels burning pain when standing for prolonged periods." AR 663-64.

17    As of May 27, 2020, Ms. Haag reported to Dr. Manvelyan that she did not get to finish her

18    physical therapy and "the way her back hurts, she is afraid to go back to work." Ms. Haag stated

19    that "she would not be able to stand for 15 mins or stoop or lift more than 5 pounds and bend over,

20    her job requires all of that." Dr. Manvelyan prescribed gabapentin and again advised Ms. Haag to

21    "reconsider/postpone" her return to work. AR 791.

22    **C.    Ms. Haag Submits Her LTD Claim to Unum**

23    Pursuant to Dr. Manvelyan's advice, Ms. Haag submitted her LTD claim to Unum on

24    June 1, 2020. Ms. Haag stated in her claim form that she suffered from "herniated lumbar disc,

25    sciatica," and that she was "unable to stand for more than 15 minutes, bend over, stoop, or lift

26    anything more than 5 lbs." AR 58-62.

27    Dr. Manvelyan completed the attending physician statement and certified Ms. Haag's date

28    of disability as August 2, 2019. Dr. Manvelyan diagnosed Ms. Haag with low back pain, lumbar

1    spondylosis/degenerative disc disorder, herniated L5-S1 disc, lumbar radiculopathy, and sciatica.

2    Dr. Manvelyan repeated the same restrictions as in Ms. Haag's claim form, and stated that her

3    treatment plan was to continue physical therapy and medication, and also consider pain

4    management/interventions. AR 35-37.

5         Unum conducted a telephonic interview with Ms. Haag on June 10, 2020. Ms. Haag

6    confirmed that she had had surgery in January, but her physical therapy was delayed due to

7    COVID-19. She said she did not think there was any "specific injury" that caused her back pain;

8    her physicians "think it was caused by years of physical work. Clmt stated her job requires a lot of

9    movement." Ms. Haag stated that Dr. Pradhan had "advised her not to lift more than 5 lbs." She

10   also informed Unum "she is unable to sit for more than 15-30 minutes or to stand more than 10

11   minutes without needing to change positions." She reported that her job "requires a lot of standing,

12   walking, lifting up to 20 lbs and a lot of bending down into refrigerators to get blood to prep for

13   transfusions." AR 97-102.

14        Meanwhile, Ms. Haag continued with her treatment, which revealed other problems. On

15   June 5, 2020, Ms. Haag visited with Dr. Linane and complained of worsened migraines and

16   chronic daily pain. AR 660. On June 26, 2020, Ms. Haag again reported migraines to Dr. Linane,

17   and was not able to tolerate medication for them due to side effects. AR 657. Dr. Linane referred

18   Ms. Haag for a brain MRI, which was fortunately negative. AR 659, 803-04.

19        Physical therapy sessions from this time period revealed that Ms. Haag consistently

20   suffered from range of motion limitations, strength limitations, and "apprehension with all

21   movements." She also had "Ambulation deficits, Muscle spasms, Pain limiting function." Ms.

22   Haag repeatedly complained of discomfort in her hip. *See, e.g.,* AR 1277, 1295, 1310, 1325, 1328,

23   1332.

24        On June 19, 2020, Unum conducted a "forum discussion" in which it concluded "this job

25   appears to match…a light occupation where one would frequently sit and occasionally stand and

26   walk with standing and walking in total going into the frequent range at least at time…. It appears

27   that the job is heavier than the occupation." Unum opined that a "typical recovery" from a

28   microdiscectomy is "6 weeks. However clmt was not advised to wean out of the brace and start PT

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

1    until 6 wks post." Thus, Unum found disability supported "to the 4/27/20 ortho" visit. AR 234. In

2    a July 2, 2020 discussion Unum opined that records from Dr. Linane "do not support ongoing

3    functional loss" after that date, and requested additional medical records. AR 410.

4        Meanwhile, Ms. Haag visited Dr. Manvelyan on July 22, 2020 to discuss possibly

5    returning to work. Ms. Haag reported that she still suffered from low back and right hip pain. "She

6    states she is not better…. She is very anxious about the prospect of returning to work without

7    complete recovery and afraid that she will get re-injured." Dr. Manvelyan noted Ms. Haag's

8    "limited ROM…stiffness, pain radiating to her Right hip area," and concluded, "Patient continues

9    to be disabled and not ready to return to work as of now." Dr. Manvelyan recommended waiting

10   for further input from Dr. Pradhan. AR 1041-42.

11       Dr. Pradhan referred Ms. Haag to physical medicine and rehabilitation specialist Dr. Jared

12   Myers, who saw Ms. Haag on July 31, 2020. Ms. Haag reported that she continued to suffer from

13   back pain, which "goes down the right leg. Most of the time pain feels burning." Dr. Myers

14   diagnosed Ms. Haag with piriformis syndrome[2] and lumbar spondylosis with radiculopathy. AR

15   1096-98. Ms. Haag returned to Dr. Myers on August 4, 2020 and received a piriformis injection

16   under ultrasound to treat her pain. AR 1093-95.

17       Ms. Haag saw Dr. Pradhan on August 5, 2020, who noted that Ms. Haag's "pain has come

18   back on and off." He deferred Ms. Haag's care to "PM&R/Pain experts" and would only "follow

19   the patient for surgical issues." AR 1091.

20       On August 5, 2020, Kay O'Reilly RN, a Unum clinical consultant, evaluated Ms. Haag's

21   file. She concluded that "there is no support for ongoing functional loss beyond the 4/27/20 spine

22   surgeon visit. She was released from care." O'Reilly complained that were no restrictions or

23   limitations from Dr. Linane and "no clear indication of functional loss due to her headaches."

24   O'Reilly acknowledged Ms. Haag's abnormal "exam findings in the neuro OV," but minimized

25   them because they were reported in a "video visit" and it was "unclear" how they were

26   determined. O'Reilly dismissed Dr. Manvelyan's restrictions and limitations because they were

27

28   ───────────────
     [2] Piriformis syndrome occurs when the piriformis muscle in the buttocks compresses the
     sciatic nerve and causes inflammation.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

1  "based up on the clmt's reported capacity." In short, she felt disability was only supported through

2  Ms. Haag's April 27, 2020 visit with Dr. Pradhan. AR 643-45.

3        Unum also conducted a vocational review in which it determined that Ms. Haag's

4  occupation was that of "clinical laboratory scientist." This occupation involved "light work

5  requiring exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force

6  frequently… One would frequently sit and occasionally stand and walk with standing and walking

7  in total going into the frequent range at least at times." AR 634-35. This chosen occupation was

8  less strenuous than Ms. Haag's actual job, which required lifting up to 50 pounds occasionally.

9  AR 78.

10        To clarify Ms. Haag's status, Unum sent a letter to Dr. Manvelyan on August 10, 2020,

11  asking if she was "endorsing restrictions and limitations…or would you defer to her orthopedic

12  surgeon?" AR 650. Unum's on-site physician ("OSP"), Todd Lyon (family medicine), also sent

13  Dr. Pradhan a similar letter on August 13, 2020, requesting specific restrictions and limitations.

14  AR 674-75.

15        Dr. Pradhan responded on August 17, 2020, stating, "Patient had not completed prescribed

16  post-operative physical therapy post surgery. Patient experienced delay in treatment due to

17  COVID-19. Non-surgical follow up was recommended with pain mgmt. Delayed healing." AR

18  681-82.

19        Dr. Lyon was unhappy with this response, stating, "Dr. Pradhan did not directly answer my

20  questions. There is no agreement. He did not provide any additional detailed or specific clinical

21  information or medical evidence…. Assessment: R&Ls are uncertain." AR 687.

22        Because of this "disagreement," Unum referred Ms. Haag's file for review by a Designated

23  Medical Officer ("DMO"). AR 699. In the referral, Dr. Lyon acknowledged that "the insured did

24  not report any significant change in symptoms following recovery" from her surgery, and stated,

25  "In my opinion, the insured's complaints do not appear associated with her lumbar disc bulge or

26  discectomy." He opined that any such pain might be related to Ms. Haag's diagnosed fibromyalgia

27  syndrome and myofascial pain. Dr. Lyon dismissed Ms. Haag's migraines because "there were no

28  documented provider observations of apparent headache pain related distress." He concluded, "I

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    do not see evidence to preclude the insured from performing the VRC-defined work activities

2    which limit force exertion to no more than 20 pounds and require occasional standing and walking

3    from 4/28/20 forward." AR 689-90.

4        The DMO review response was arranged by third-party vendor Dane Street and assigned to

5    Dr. Steven Milos (orthopedics), who completed his report on August 24, 2020. The report, which

6    is barely more than a page, offered an incomplete list of physical examination results of Ms.

7    Haag's lower extremities limited to February to June of 2020. Dr. Milos concluded, "Based on a

8    review of the medical records, I agree with the opinion of the OSP that the claimant would be

9    expected to perform the work duties as outlined above. The claimant has a normal gait pattern

10   with no radiculopathy which would allow sitting with occasional standing and walking. There is

11   normal strength except mild right hip weakness. This would allow exertion of up to 20 pounds

12   occasionally." AR 696-98.

13       Although Dr. Lyon and Dr. Milos agreed that Ms. Haag was not disabled, Unum did not

14   immediately issue a denial letter because it had not heard back from Dr. Manvelyan and was

15   uncertain regarding Ms. Haag's date of disability as defined by the Policy. AR 702. Unum

16   requested further records from Dr. Manvelyan. AR 815.

17       Dr. Manvelyan responded on August 27, 2020, stating, "She is fully disabled and

18   completely disabled from her job." AR 736. Updated records from Dr. Manvelyan confirmed Ms.

19   Haag's piriformis injection, as well as a second scheduled MRI. Ms. Haag was upset that she had

20   to have her disability extended and stated, "she may need to reevaluate her career because she

21   can't do her current job due to her pain." The notes indicated that she had pain in the right hip area

22   and it was recommended that she follow up with pain management. AR 827, 829. Ms. Haag told

23   Dr. Manvelyan that "she worked very hard to get her degree and loves her job. She feels frustrated

24   that her back issue is unabling her to continue her career path." AR 829.

25       Contemporaneous physical therapy notes documented pain in her back, hip, and thigh, up

26   to 9/10, with "aberrant tissue tension." AR 2316-17.

27       Dr. Lyon reviewed the updated records on September 28, 2020, and concluded that they

28   "do not contain additional evidence that supports any change in my prior opinion." AR 853. Dr.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Lyon spoke with Dr. Manvelyan on October 12, 2020 and asked about Ms. Haag's ability to perform a light occupation. Dr. Manvelyan stated that Ms. Haag was unable to work due to her pain and intolerance of sitting and was being treated for piriformis syndrome. AR 865.

Dr. Lyon rejected this opinion because Dr. Manvelyan did "not provide any new physical findings or diagnostics." He also stated, erroneously, that there was "no reference to piriformis syndrome in any of the records." Dr. Lyon concluded that an independent evaluation was not required because "the issue is one of differing interpretations of the same medical data." AR 865.

Unum referred Ms. Haag's file back to Dr. Milos, who briefly stated on October 15, 2020 that based on the notes from two of Ms. Haag's office visits in August of 2020, he agreed with Dr. Lyon that Ms. Haag could return to work. AR 868.

**D.      Unum Approves Ms. Haag's LTD Claim, But Only for a Limited Time Period**

On October 19, 2020, based on the reviews by Dr. Lyon and Dr. Milos, Unum wrote to Ms. Haag and explained that it had approved her LTD claim, but only for the dates from February 7, 2020 to April 27, 2020. Unum paid Ms. Haag the minimum benefit for this period, totaling $1,393.34, due to an offset from her receipt of California state disability benefits. AR 882, 884-893.

**E.      Ms. Haag Appeals**

Ms. Haag appealed this decision and completed it for Unum's review on June 1, 2021. AR 962-66, 1007-2383. With her appeal, Ms. Haag submitted the results of a functional capacity examination ("FCE"), a supportive letter from Dr. Manvelyan, and updated medical and physical therapy records.

Ms. Haag's January 14, 2021 FCE was conducted by Ramone De Los Reyes, PT, DPT, and lasted two days. AR 1007-20. Testing revealed that Ms. Haag gave maximum effort, intra-test reliability was evident, her physical behaviors correlated with her subjective complaints of pain, and her increase in heart rate correlated with maximum effort during tasks. AR 1009.

Ms. Haag "presented with functional limitations on her first day of testing," and "her performance and activity declined on day 2." AR 1009. For example, on the first day Ms. Haag could sit for 45 minutes, but that ability decreased to 28 minutes on the second day. AR 1010. She

1    ambulated more slowly and with a more guarded posture on the second day of testing AR 1010.

2    Ms. Haag informed Mr. De Los Reyes that she had to lie down for 1.5 hours after her first day of

3    testing, did not sleep well, and felt on day two "sore as if she was hit by a bus." AR 1012.

4        Ultimately, the FCE showed that Ms. Haag could only sit on an "occasional" basis, 30

5    minutes continuously, up to four hours per day. She could stand for only fifteen minutes

6    continuously, up to one hour per day. Lifting, pushing, and pulling was limited to ten pounds. Mr.

7    De Los Reyes concluded, "Based on testing, the client is unable to perform sedentary work as she

8    is only able to maintain static sitting for 4 hours per day. She would also not be able to meet the

9    physical demands of her job as a clinical laboratory scientist." AR 1009.

10       Dr. Manvelyan's letter of support explained that she had been treating Ms. Haag since

11    2015. Dr. Manvelyan stated that Ms. Haag "has always been a very reliable and trustworthy

12    patient" who "has been truthful in her reporting of her physical conditions and never exaggerated

13    or oversold her impairments in any way." Dr. Manvelyan further explained that Ms. Haag "has

14    been trying desperately to find solutions to her back pain and other conditions" for several years,

15    and "has been consistent in her reporting of the symptoms." AR 1021.

16       Dr. Manvelyan also stated that Ms. Haag "loves her work" and "invested many years of

17    her life" in professional development. Ms. Haag "impressed me as a very dedicated employee who

18    has a high sense of duty to her colleagues and her commitments," noting one occasion when Ms.

19    Haag "felt compelled to return to work" during her rehabilitation because there was a staffing

20    shortage. AR 1021.

21       As for Ms. Haag's medical course of treatment, Dr. Manvelyan stated that Ms. Haag had

22    undergone numerous studies and pain management protocols, "some with various unpleasant side

23    effects." She also underwent epidural injections and a microdiscectomy. "I would not imagine one

24    can subject herself to an invasive procedure, medications with numerous unpleasant side effects

25    and hours and hours of time consuming physical therapy sessions, unless she was truly in pain."

26    AR 1021.

27       Dr. Manvelyan reaffirmed her October 2020 opinion in her discussion with Dr. Lyon that

28    Ms. Haag was "fully disabled." In the six months preceding that date, "her condition did not

11

1  improve and she continued to suffer from pain." Dr. Manvelyan noted that in addition to back

2  pain, Ms. Haag was being treated for piriformis syndrome. Dr. Manvelyan also commented that

3  "normal gait and normal strength in the extremities does not preclude the fact that she is in pain."

4  Dr. Manvelyan urged Unum to contact her if additional information or clarification was needed.

5  AR 1021. Unum never did so.

6          Ms. Haag's updated medical records showed that she continued to consult with Dr.

7  Manvelyan and Dr. Myers, as well as a rheumatologist. Ms. Haag also endured another round of

8  physical therapy. She attended 23 sessions from September 30, 2020 to February 2, 2021. She was

9  treated for low back pain, pain in her right hip, and radiculopathy. AR 2316-83.

10         **F.    Unum Upholds Its Denial Decision on Appeal**

11         Unum clinical consultant RN Megan M. Yeaton reviewed Ms. Haag's file on June 21,

12  2021, and opined that "the information supports the functional ability to have resumed

13  occupational demands on a full-time basis as of 4/27/2020. Although she continued in formal

14  physical therapy, individuals can attend physical therapy while working. Physical exams were

15  stable. In-office x-rays were stable, without instability." AR 2392-97.

16         Ms. Haag's file was then reviewed by Dr. Scott Norris (family/occupational/aerospace

17  medicine) on July 8, 2021. Dr. Norris dismissed Ms. Haag's FCE because it was performed eight

18  months after the effective claim closure date and thus was not "time-relevant." He also opined that

19  the lower extremity weakness documented in the FCE was inconsistent with examinations of Ms.

20  Haag's treaters. Dr. Norris acknowledged medical notes regarding Ms. Haag's "antalgic gait,"

21  "thoracolumbar tenderness and guarding," and "exquisite tenderness" of the sciatic notch and

22  piriformis, but was unconvinced that any of these issues would cause disability. Dr. Norris also

23  was critical of Ms. Haag's "generally stable" level of treatment of "modest intensity," and

24  disagreed with her extended ineffective physical therapy treatment. Ultimately Dr. Norris

25  conceded that while Ms. Haag had an "overall perception of pain," the medical evidence did "not

26  support that collective impairment due to all comorbid conditions rose to a level that would have

27  precluded the EE from performing full time light work as of 4/27/20." AR 2452-57.

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

**PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF**

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

As required by ERISA regulations, Unum provided RN Yeaton's and Dr. Norris' opinions to Ms. Haag for review and comment. AR 2459-60. Ms. Haag responded on February 14, 2022. AR 2515-17. Included was a declaration by Ms. Haag in which she stated that she gave her best effort in the FCE and there was "no noticeable change in my condition of functional abilities between April 29, 2020 and when the FCE was completed on January 14, 2021." Thus, the results documented in the FCE were reflective of Ms. Haag's condition during the entirety of 2020. AR 2518-19.

Crucially, Ms. Haag also reported that she had begun treating with rheumatologist Dean Noritake in August of 2020, and that Dr. Noritake had ordered an MRI of her hip in June of 2021 which showed the cause of her hip and leg pain all along: a labral tear. On September 27, 2021, Ms. Haag underwent right hip arthroscopy and labral repair with hip specialist Dr. Timothy Jackson, and she followed up with physical therapy as prescribed. AR 2519, 2549-51.

It does not appear anyone at Unum reviewed this information on appeal. Instead, Unum issued a letter dated March 14, 2022 in which it repeated Dr. Norris' conclusions and determined that Ms. Haag was not disabled after April 28, 2020. Unum rejected Ms. Haag's February 14, 2022 response on the ground that "the information you submitted is not time relevant[.]" No medical professional provided support for this new rationale. AR 2557-66.

Having exhausted her appeals, Ms. Haag initiated this action in May of 2022. In August of 2022, Ms. Haag returned to work in a less physically demanding job after completing her recovery from her hip surgery.

## III. **POINTS AND AUTHORITIES**

### A. **The Standard of Review Is De Novo**

As noted above, this action arises under ERISA. Under ERISA, the default standard of review is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). A claim administrator such as Unum is only entitled to deferential review if it can demonstrate that the plan has legally granted it discretionary authority to determine benefit eligibility. 489 U.S. at 114-15. This means that the burden of proof rests with Unum. *Kearney v.*

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

1   *Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc) ("the administrator has to show

2   that the plan gives it discretionary authority in order to get any judicial deference to its decision").

3       Here, the Policy does contain language purporting to grant Unum discretionary authority to

4   make benefit determinations. *See, e.g.,* AR 2655, 2683 ("The Plan, acting through the Plan

5   Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make

6   benefit determinations under the Plan.").

7       However, the Policy was issued in California with the purpose of covering California

8   residents, and thus, to the extent it is not governed by ERISA, it is governed by California

9   insurance law. *See* 29 U.S.C. § 1144(b)(2)(A) (ERISA's "saving clause," which saves from

10  preemption "any law of any State which regulates insurance, banking, or securities"). As a result,

11  California Insurance Code Section 10110.6 applies, which renders grants of discretionary

12  authority such as the ones cited above "void and unenforceable." *See Orzechowski v. Boeing Co.*

13  *Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 694-95 (9th Cir. 2017)

14  (Section 10110.6 is saved from ERISA preemption).

15      In short, the appropriate standard of review is de novo. Under de novo review, the court's

16  sole role is to determine if Ms. Haag qualifies for benefits under the Policy, without any deference

17  to any of Unum's decisions. *Opeta v. Northwest Airlines Pension Plan for Cont. Emps.*, 484 F.3d

18  1211, 1219 (9th Cir. 2007).

19      **B.    Under De Novo Review, the Preponderance of the Evidence Demonstrates that**

20          **Ms. Haag Was Disabled and Entitled to LTD Benefits**

21          1.    The Record Demonstrates That Ms. Haag Suffered from Back, Hip, and

22              Leg Pain

23      There is no dispute that Ms. Haag suffered from significant back, hip, and leg pain. The

24  medical records document that her pain began in 2018, grew worse in 2019, and then, on August

25  2, 2019, a painful flare-up prevented her from going to work. Ms. Haag underwent physical

26  therapy, as well as an epidural injection. She made a valiant effort to return to work in October of

27  2019. However, because her job was not sedentary, this aggravated her symptoms, so she reduced

28  her hours on November 7, 2019, and then was forced to stop entirely on January 1, 2020.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

14

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

During this time Ms. Haag diligently sought treatment from numerous physicians, including her primary care doctor (Dr. Manvelyan), orthopedist (Dr. Pradhan), neurologist (Dr. Linane), and physical medicine and rehabilitation specialist (Dr. Myers), among others. Her symptoms were consistent throughout this period, as she reported back and hip pain radiating down through her legs. She received treatment at various levels of intensity, from physical therapy to epidural and piriformis injections to a lumbar microdiscectomy. Eventually, a hip MRI in June of 2021 revealed the true cause of her symptoms, a labral tear in her hip. This was surgically repaired in September of 2021 and Ms. Haag was thankfully able to finally return to work in August of 2022.

Throughout this time period Ms. Haag's primary care physician, Dr. Manvelyan, who was in the best position to observe Ms. Haag and evaluate her progress, consistently considered Ms. Haag to be disabled from working, and repeatedly told Unum this. *See, e.g.*, AR 35-37 (initial attending physician's form), 865 (telephonic discussion with Unum Dr. Lyon), 1021 (letter in support of Ms. Haag's appeal).

Indeed, Unum agreed at first, as it approved Ms. Haag's claim from February 7, 2020 to April 27, 2020. AR 884. Thus, the primary question raised by Unum's denial is: what changed in April of 2020? Plaintiff recognizes that just because Unum initially pays benefits, it is not obligated to do so in perpetuity. However, in order to defend its decision, Unum must be able to point to some improvement in Ms. Haag's condition to support its change of heart. "The Ninth Circuit has made clear that to justify a termination decision, one would expect to see an improvement in a claimant's medical condition." *Barteau v. Prudential Ins. Co. of Am.*, No. CV-08-02733 RSWL, 2009 WL 1505193, at *19-20 (C.D. Cal. May 26, 2009); s*ee also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) ("one would expect the [medical records] to show an *improvement*, not a lack of degeneration") (emphasis in original); *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002) ("[U]nless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments."); *Roehr v. Sun Life Assurance Co. of Canada*, 21 F.4th 519, 526 (8th

1   Cir. 2021) (insurer "pointed to no information available to it that altered in some significant way

2   its previous decision to pay benefits").

3           Unum points to April 27, 2020 as the date Dr. Pradhan released Ms. Haag from his care

4   after her microdiscectomy surgery, thereby demonstrating that she had "recovered." However, it

5   was clear that Dr. Pradhan did not fully understand Ms. Haag's condition at that time. He

6   mistakenly commented that her physical therapy was "complete or nearly complete" when in fact

7   it had been interrupted. AR 1104. Furthermore, the record demonstrates that his primary role in

8   Ms. Haag's treatment was surgical, and not as a primary carer. Indeed, Dr. Pradhan explicitly

9   deferred to Ms. Haag's other physicians regarding her overall condition and ongoing treatment.

10  *See* AR 1104 ("The next follow-up visit with me will be as needed"), 1091 ("To optimize the

11  patient's physical medical management, I am recruiting the help of our PM&R/Pain experts. I will

12  continue to follow the patient for surgical issues."). Furthermore, when Unum specifically asked

13  Dr. Pradhan about Ms. Haag's condition, he acknowledged that he had erred regarding her

14  physical therapy ("Patient had not completed prescribed post-operative physical therapy post

15  surgery"), and informed Unum that "follow up was recommended with pain mgmt." and that Ms.

16  Haag suffered from "[d]elayed healing." AR 681-82.

17          Indeed, the contemporaneous medical records show that in April of 2020 Ms. Haag was

18  not doing well. Dr. Pradhan's own examination from April 27, 2020 showed that Ms. Haag

19  suffered from tenderness on palpation, and her strength and range of motion testing was limited

20  due to guarding. AR 1104. Furthermore, on April 24, 2020, Ms. Haag reported to Dr. Manvelyan

21  that she still had right leg pain and "pin and needles" all the way down to her toe, "at times the

22  pain is 6/10." Ms. Haag was frustrated because she had been following her recovery regimen but it

23  was not working. AR 323. On May 20, 2020, Ms. Haag reported to Dr. Linane that she "continues

24  to have back pain, unable to return to work due to tingling in her foot, and deep aching pain down

25  her right side." AR 664. Ms. Haag further told Ms. Manvelyan on May 27, 2020 that "the way her

26  back hurts, she is afraid to go back to work." Dr. Manvelyan agreed and advised Ms. Haag to

27  "reconsider/postpone the work return date." AR 792.

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

As explained above, it made sense that the end of Ms. Haag's surgery recovery period did not coincide with an improvement of symptoms, because the microdiscectomy did not address the actual cause of her symptoms, which was a labral tear finally detected in 2021 and repaired in 2022. AR 2519, 2549-51. As a result, while three months may be a typical recovery period for a microdiscectomy, as Dr. Norris contended, AR 2411, if the microdiscectomy does not solve the patient's actual problem, it is unreasonable to call it a success and stop paying benefits.

2.    Ms. Haag Was Unable to Perform the Duties of Her Regular Occupation

Because of Ms. Haag's pain, which was consistently corroborated by multiple physicians and physical therapists throughout her disability period, it is clear that she could not return to work. Ms. Haag was a clinical lab scientist at a hospital, and her job required her to perform frequent (i.e., 1/3 to 2/3 of the time) sitting, standing, walking, and twisting. She occasionally (up to 1/3 of the time) had to lift items up to 50 pounds and bend or stoop. AR 78. In short, her job was not a sedentary one and required significant physical exertion, as even Unum admitted. *See* AR 635 (classifying job as "light," i.e., heavier than sedentary, with "frequent" standing and walking), 234 ("It appears that the job is heavier than the occupation").

Ms. Haag's own reporting to Dr. Manvelyan and Unum confirmed that these tasks were impossible for her. In May of 2020 she informed Dr. Manvelyan that she was afraid of returning to work because "she would not be able to stand for 15 mins or stoop or lift more than 5 pounds and bend over, her job requires all of that." AR 791. In June of 2020 Ms. Haag informed Unum her job "requires a lot of standing, walking, lifting up to 20 lbs and a lot of bending down into refrigerators to get blood to prep for transfusions." AR 100. Dr. Manvelyan confirmed this was impossible because Ms. Haag was "unable to stand more than 15 min, bend over, stoop, no lifting more than 5 lbs." AR 36. In July of 2020 Ms. Haag reported to Dr. Manvelyan that "she is not better" and was "anxious about the prospect of returning to work without complete recovery and afraid that she will get re-injured." AR 1041-42. This was a reasonable fear because it is precisely what happened when she prematurely returned to work in October of 2019. Dr. Manvelyan agreed that "Patient continues to be disabled and not ready to return to work as now." AR 1041.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

17

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1  These problems were not simply self-reported by Ms. Haag. Physical therapy records

2  reported that Ms. Haag consistently suffered from range of motion limitations, strength

3  limitations, and "apprehension with all movements." She also had "Ambulation deficits, Muscle

4  spasms, Pain limiting function." *See, e.g.,* AR 1277, 1295, 1310, 1325, 1328, 1332.

5     The effects of Ms. Haag's symptoms were also confirmed by her January 14, 2021 FCE.

6  Even though Ms. Haag gave maximum effort, she suffered from functional limitations on both

7  days of testing, and "her performance and activity declined on day 2." AR 1009. Indeed, Ms. Haag

8  told Mr. De Los Reyes that on day two she felt "sore as if she was hit by a bus." AR 1012. The

9  FCE concluded that Ms. Haag could only sit for 30 minutes continuously, up to four hours per

10  day, and stand for fifteen minutes continuously, up to one hour per day. Lifting, pushing, and

11  pulling was limited to ten pounds. As Mr. De Los Reyes observed, these requirements fell well

12  below the demands of her job: "She would also not be able to meet the physical demands of her

13  job as a clinical laboratory scientist." AR 1009. Indeed, she could not even perform sedentary

14  work: "Based on testing, the client is unable to perform sedentary work as she is only able to

15  maintain static sitting for 4 hours per day." AR 1009. *See Armani v. Northwestern Mut. Life Ins.*

16  *Co.,* 840 F.3d 1159 (9th Cir. 2016) (person who cannot sit for more than four hours in an eight-

17  hour workday cannot perform "sedentary" work).

18     Dr. Norris dismissed the results of the FCE because it took place "8 months after the

19  effective claim closure date" of April 27, 2020 and thus was not "time-relevant." AR 2455. This

20  criticism was unfair because Unum did not deny Ms. Haag's claim until October 19, 2020, which

21  was almost six months after the "effective claim closure date," thereby effectively precluding any

22  contemporaneous assessment. Furthermore, as Ms. Haag informed Unum, there was "no

23  noticeable change in my condition of functional abilities between April 29, 2020 and when the

24  FCE was completed on January 14, 2021." AR 2518. Therefore, the FCE presented an accurate

25  depiction of Ms. Haag's condition throughout the disability period. Unum failed to respond to this

26  assertion in its letter denying her appeal. AR 2557-66.

27

28

1

### 3.    Ms. Haag Is Credible

Ms. Haag's primary disabling symptom was pain. As the Ninth Circuit has recognized, "Many medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011); *see also Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1196 (11th Cir.), *reh'g granted, opinion vacated in part*, 506 F.3d 1316 (11th Cir. 2007), *and adhered to in part on reh'g*, 546 F.3d 1353 (11th Cir. 2008) ("Indeed, the only evidence of a qualifying disability may sometimes be the sort of evidence that [defendants] characterize as 'subjective,' such as physical examinations and medical reports by physicians, as well as the patient's own reports of his symptoms."); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) ("pain often…cannot be detected by laboratory tests"); *Perryman v. Provident Life & Acc. Ins. Co.*, 690 F. Supp. 2d 917, 945-946 (D. Ariz. 2010) (cannot discount opinions of treating physicians because they relied on subjective complaints).

As a result, a patient's credibility, while important in all disability cases, is particularly important in cases involving subjective complaints such as those of pain. This is no impediment to Ms. Haag's case because her credibility is unquestioned. Dr. Manvelyan, the physician who knows Ms. Haag best, vouched for her, stating that she "has always been a very reliable and trustworthy patient" who "has been truthful in her reporting of her physical conditions and never exaggerated or oversold her impairments in any way." AR 1021. The FCE further corroborated Ms. Haag's credibility, finding that she was significantly impaired even though she gave maximum effort, her physical behaviors correlated with her subjective complaints of pain, and her increase in heart rate correlated with maximum effort during tasks. AR 1009.

Of course, Unum and the court are not required to blindly defer to Dr. Manvelyan's opinions simply because she is Ms. Haag's primary treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S. Ct. 1965, 155 L.Ed.2d 1034 (2003). Nor is Unum legally required to adopt the findings of the FCE. However, "courts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file, especially when they are employed by the insurer as here." *Backman v. Unum Life Ins. Co. of Am.*,

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

19

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    191 F. Supp. 3d 1053, 1066 (N.D. Cal. 2016). As a result, the Court should elevate the opinions of

2    Ms. Haag's treating physicians over those who did not examine or speak with her.

3         Furthermore, to the extent Unum questioned Dr. Manvelyan's opinions or the results of the

4    FCE and wanted to arrange its own examination of Ms. Haag, it was entitled to do so. AR 2660

5    ("We may require you to be examined by a physician, other medical practitioner and/or vocational

6    expert of our choice…. We can require an examination as often as it is reasonable to do so.").

7    However, Unum never sought to conduct such an examination. *See Calvert v. Firstar Fin., Inc.*,

8    409 F.3d 286, 295 (6th Cir. 2005) ("the failure to conduct a physical examination – especially

9    where the right to do so is specifically reserved in the plan – may, in some cases, raise questions

10   about the thoroughness and accuracy of the benefits determination").

11        Ms. Haag's credibility is further bolstered by her course of treatment. The record shows

12   that Ms. Haag consistently sought treatment from numerous physicians from various specialties

13   over several years, following those physicians' advice in an effort to improve her condition. As

14   Dr. Manvelyan explained, Ms. Haag "has been trying desperately to find solutions to her back

15   pain and other conditions" for several years, and "has been consistent in her reporting of the

16   symptoms." AR 1021. These solutions included injections and surgery, as well as countless hours

17   of physical therapy. "I would not imagine one can subject herself to an invasive procedure,

18   medications with numerous unpleasant side effects and hours and hours of time consuming

19   physical therapy sessions, unless she was truly in pain." AR 1021. *See Diaz v. Prudential Ins. Co.

20   of Am.*, 499 F.3d 640, 646 (7th Cir. 2007) (repeated attempts to seek treatment supported disability

21   claim); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (improbable that a claimant

22   would undergo multiple surgeries and medications simply in order to strengthen her credibility

23   claim and increase her chance of receiving disability benefits).

24        Finally, Ms. Haag was not seeking disability benefits in an effort to avoid working. The

25   record clearly shows that Ms. Haag was proud of her job and wanted to return as soon as she

26   could. Indeed, the record shows that she returned to work too soon in October of 2019; she was

27   forced to modify her hours in November of 2019 and then stop work entirely in January of 2020.

28   While out of work, she commented to Dr. Manvelyan on more than one occasion that she was

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

concerned about missing work. *See* AR 301 ("feels guilty" about calling in sick), 777 ("stressed about the pain, missing work and about her future with her job"), 1021 ("felt compelled to return to work" during her rehabilitation because there was a staffing shortage). Dr. Manvelyan observed in her letter supporting Ms. Haag's appeal that Ms. Haag "loves her work" and "impressed me as a very dedicated employee who has a high sense of duty to her colleagues and her commitments." AR 1021.

In short, Ms. Haag is highly credible and thus her complaints of disabling pain are believable and supported by the record. *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905 (9th Cir. 2016) (plaintiff should be believed if the insurer has no basis for rejecting his credibility); *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008) ("we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility").

### 4.    Unum's Medical Review Is Entitled to Little Weight

Unum relied on Dr. Scott Norris to support its final decision to terminate Ms. Haag's benefits. As noted above, Dr. Norris simply reviewed a paper file and never actually spoke with or examined Ms. Haag. Furthermore, while his report states that he is board-certified in "Family/Occupational/Aerospace Medicine," AR 2457, it is unclear what expertise he has with any of the conditions with which Ms. Haag was diagnosed. As a result, his opinion is entitled to little weight.

Furthermore, Dr. Norris is a frequent medical reviewer for Unum whose opinions have been rejected on numerous occasions by the courts, including three times in the last five years alone in cases involving plaintiff's counsel. *See Fleming v. Unum Life Ins. Co. of Am.*, 2018 WL 6133859 (C.D. Cal. 2018); *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698 (C.D. Cal. 2020); and *Olis v. Unum Life Ins. Co. of Am.*, 2020 WL 4380948 (C.D. Cal. 2020).

The decision in *Fleming* is particularly instructive because, as in this case, Dr. Norris rejected testing submitted on appeal on the ground that it was not "time relevant." Dr. Norris also stated that "many months of self-limited activity" may have affected the test results. The district court rejected this analysis:

1

2

> Unum's findings on appeal are likewise unpersuasive. Unum
> submitted her appeal for a paper-only review with Dr. Norris, who is
> board certified in family, occupational, and aerospace medicine.
> Under ERISA, a reviewing physician must have "appropriate
> training and experience in the field of medicine involved in the
> medical judgment." *See* 29 C.F.R. § 2560.503-1(h)(3)(iii). Unum
> has not explained how Dr. Norris had "training and experience" in
> the fields of medicine – particularly pain management – involved in
> the medical judgment at issue here…. Yet Dr. Norris summarily
> concluded that Fleming's self-reported pain and lack of capacity
> were inconsistent with the "minimal findings on physical
> examinations…and her observed moderate level of activity" …
> While Unum is not required to send a claimant to an in-person
> examination, the Court declines to credit Dr. Norris's opinion over
> those of the medical evaluators who consistently examined Fleming
> in person.

3

4

5

6

7

8

9

2018 WL 6133859 at *10. For the same reasons, the Court should reach the same result here as in

*Fleming*.

Dr. Norris has been criticized by numerous other courts as well. At least two other courts

have faulted his argument regarding "time-relevant" evidence. *See Chicco v. First Unum Life Ins.*

*Co.*, 2022 WL 621985, at *4 (S.D.N.Y. 2022) (finding that Dr. Norris did not refute the

conclusions of plaintiff's treating physicians, and he improperly "discounted as not time-relevant

physical findings from examinations performed after [plaintiff] stopped working."); *Tam*, 491 F.

Supp. 3d at 711 n.11 (C.D. Cal. 2020) ("Dr. Norris dismissed the CPET Report and

Neuropsychological Evaluation as 'not time-relevant.'… However, it is obvious that medical

reports are inevitably rendered retrospectively and should not be disregarded solely on that

basis.").

Other courts have found other issues with Dr. Norris' opinions, including ignoring

information, employing a selective review of the evidence, and arriving at conclusory findings,

among other issues. *See, e.g., Snapper v. Unum Life Ins. Co. of Am.*, 2023 WL 2539242, at *33

(N.D. Ill. Mar. 16, 2023) ("A central problem with Dr. Norris's opinions is that, at least with

respect to some issues, they are presented at such a level of generality that they are virtually

impossible to assess"); *Boersma v. Unum Life Ins. Co. of Am.*, 546 F. Supp. 3d 703, 713 (M.D.

Tenn. 2021) (rejecting Dr. Norris' opinion as "conclusory" and "striking" given his "lack of

meaningful expertise"); *Boykin v Unum Life Ins. Co. of Am.*, 2022 WL 458213, at *16 (E.D. Cal.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    Feb. 15, 2022) ("Dr. Norris' evaluation is entitled to little weight."); *Carney v. Unum Life Ins. Co.*

2    *of Am.*, 596 F. Supp. 3d 845, 856 (E.D. Mich. 2022) ("Dr. Norris' contrary conclusions are not

3    persuasive, and at least some of Dr. Norris' conclusions are not borne out by the objective

4    evidence present in the administrative record."); *Christoff v. Unum Life Ins. Co. of Am.*, 2019 WL

5    4757884, at *9 (D. Minn. Sept. 30, 2019) (Dr. Norris "ignored information" and "reaches

6    conclusions contradicting those of several of the medical professionals who had previously

7    examined and treated" plaintiff); *Clark v. Unum Life Ins. Co. of Am.*, 2018 WL 4931935, at *15

8    (M.D. Tenn. Oct. 10, 2018) (criticizing Dr. Norris for his "conclusory findings" and "selective

9    review" of the evidence); *Dwyer v. Unum Life Ins. Co. of Am.*, 548 F. Supp. 3d 468, 483-84 (E.D.

10   Pa 2021) (Dr. Norris has not treated patients since 2010 and opined that plaintiff was not disabled

11   despite later testimony that he did not doubt the plaintiff's symptoms or the veracity of her treating

12   physician); *Hannon v. Unum Life Ins. Co. of Am.*, 988 F. Supp. 2d 981, 985-86, 992 (S.D. Ind.

13   2013) (rejecting denial based on Dr. Norris' opinion as "nothing short of arbitrary"); *Rios v Unum*,

14   2020 WL 7311343, at *3 (C.D. Cal. 2020); *Dewsnup v. Unum Life Ins. Co. of Am.*, 2018 WL

15   6478886, at *10 (D. Utah Dec. 10, 2018).

16           Dr. Norris' review here suffered from similar problems. He acknowledged that Ms. Haag

17   suffered from tenderness, guarding, reduced range of motion, and positive straight leg tests, as

18   well as an antalgic gait and a positive femoral nerve traction test, and "exquisite tenderness" of the

19   sciatic notch and piriformis, but dismissed all these symptoms without explaining why they were

20   not impairing. AR 2455. He opined that the "level of treatment remained generally stable and of

21   modest intensity." AR 2456, which was simply incorrect, as Ms. Haag underwent injections,

22   surgery, physical therapy, and finally another surgery on her hip in an effort to address her pain.

23   Dr. Norris also stated that Ms. Haag only needed one Tylenol per day in March of 2020 to treat

24   her pain, AR 2456, but Dr. Manvelyan's records show that by April 24, 2020, three days before

25   Unum terminated her benefits, Ms. Haag's pain was "aggravated," at times 6/10, and she took

26   both Flexeril (a muscle relaxant) and Amitriptyline (a nerve pain medication). AR 323. In May of

27   2020, Dr. Manvelyan added gabapentin, AR 326, which Ms. Haag had difficulty taking due to side

28   effects, AR 657.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dr. Norris also complained that Ms. Haag's physical therapy was "protracted" with a "minimal response" and did not "correlate with a significant improvement in her reported [symptoms]." AR 2456. It is unclear how this evidence supports Unum's denial; one would think that unsuccessful treatment with a "minimal response" would support a finding of disability. Furthermore, Ms. Haag explained to Unum why the physical therapy failed; it did not address her true underlying problem which was the labral tear in her hip. Unum apparently never referred this information for review by Dr. Norris or anyone else before upholding its decision on appeal.

Dr. Norris' ultimate conclusion was, "There was no evidence of significant complications following her Jan 2020 single level lumbar surgery, and, in the absence of specific complications, a 3-month recovery period would be sufficient to resume light work activity." AR 2456. This conclusion simply ignored the medical records, which showed that while Ms. Haag's lumbar surgery gave her some short-term relief, at the time of Unum's benefit termination, her pain had returned and continued throughout 2020, as Dr. Norris implicitly acknowledged by complaining that Ms. Haag's physical therapy was not working. As a result, Dr. Manvelyan was forced to increase Ms. Haag's medication, refer her to a neurologist (Dr. Linane) and a pain specialist (Dr. Myers), and prescribe a new round of physical therapy, which documented her ambulation deficits, muscle spasms, and pain. All of these problems continued until Drs. Noritake and Jackson identified and repaired her labral hip tear, AR 2519, 2549-51, which eventually allowed her to return to work.

In short, it appears that Dr. Norris's true objection to Ms. Haag's claim was that he simply did not believe her reports of pain. Indeed, he referred in his conclusion to Ms. Haag's "other conditions…which likely contributed to her overall *perception of pain*," AR 2456 (emphasis added), thereby implying that she was not actually suffering as she claimed and was perhaps simply imagining it. However, given that Dr. Norris has never met Ms. Haag, she has the full support of her treating physician, and the record supports her credibility, there is no reason the Court should give Dr. Norris' opinion any significant weight.

1

## IV.    <u>CONCLUSION</u>

2       Ms. Haag has demonstrated by a preponderance of the evidence that she was entitled to

3   continued LTD benefits and that Unum erroneously terminated her claim. Ms. Haag therefore

4   respectfully requests that the Court enter judgment in her favor and order Unum to pay all benefits

5   due under the Policy. Ms. Haag also requests a ruling that she has achieved "some success on the

6   merits" under *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158,

7   176 L. Ed. 2d 998 (2010), and is thus eligible to apply for a reasonable award of non-taxable costs

8   and attorney's fees under ERISA pursuant to Civil Local Rule 54-5. *See* 29 U.S.C. § 1132(g).

9

10  DATED: May 11, 2023                    KANTOR & KANTOR, LLP

11                                         By:    */s/ Peter S. Sessions*

12                                               Peter S. Sessions
                                                 Attorney for Plaintiff
13                                               Rebecca Haag

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF