Glenn R. Kantor, SBN 122643
Email: gkantor@kantorlaw.net
Peter S. Sessions, SBN 193301
Email: psessions@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff
REBECCA HAAG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA HAAG,<br><br>    Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Case No. 3:22-cv-03130 TSH<br><br>**PLAINTIFF'S RULE 52 OPPOSITION AND REPLY BRIEF**<br><br>**Date:  June 29, 2023** |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. POINTS AND AUTHORITIES ...........................................................................2

    A. The Standard of Review Is De Novo ........................................................2

    B. Unum's Arguments Do Not Justify Its Decision to Terminate
       Ms. Haag's Benefits ....................................................................................2

       1. Ms. Haag's Prior Ability to Work Through Her Pain Does Not
          Invalidate Her Disability Claim .....................................................2

       2. Ms. Haag's Surgery Did Not Resolve Her Pain, and Thus She
          Remained Disabled ........................................................................4

       3. Unum Fails to Impugn Ms. Haag's Credibility ..............................7

       4. Dr. Norris' Review Is Entitled to Little Weight ...........................10

       5. If Ms. Haag Prevails, There Is No Need to Remand for
          an "Any Occupation" Disability Determination ..........................14

III. CONCLUSION....................................................................................................15

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# TABLE OF AUTHORITIES

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
   458 F.3d 955 (9th Cir. 2006) (en banc) ................................................................. 2

*Chicco v. First Unum Life Ins. Co.*,
   2022 WL 621985 (S.D.N.Y. 2022) ..................................................................... 10

*Ebert v. Reliance Standard Life Ins. Co.*,
   171 F. Supp. 2d 726 (S.D. Ohio 2001) ................................................................. 3

*Groch v. Dearborn Nat'l Life Ins. Co.*,
   497 F. Supp. 3d 826 (C.D. Cal. 2020) ................................................................ 14

*Hawkins v. First Union Long Term Disability Plan*,
   326 F.3d (7th Cir. 2003) ....................................................................................... 2

*Lasser v. Reliance Standard Life Ins. Co.*,
   344 F.3d 381 (3d Cir. 2003) .................................................................................. 3

*Luu v. First Unum Life Ins. Co. of Am.*,
   2019 WL 6622848 (C.D. Cal. Nov. 14, 2019) ................................................... 10

*Mabry v. Travelers Ins. Co.*,
   193 F.2d 497 (5th Cir. 1952) ................................................................................ 3

*Opeta v. Northwest Airlines Pension Plan for Cont. Emps.*,
   484 F.3d 1211 (9th Cir. 2007) ........................................................................ 2, 8

*Rowell v. Aviza Tech. Health & Welfare Plan*,
   2012 WL 1672497 (N.D. Cal. May 14, 2012) ................................................... 12

*Shaw v. Berryhill*,
   2017 WL 7836615 (C.D. Cal. Oct. 23, 2017) ...................................................... 4

*Smith v. Bowen*,
   849 F.2d 1222 (9th Cir. 1988) ............................................................................ 10

*Tam v. First Unum Life Ins. Co.*,
   491 F. Supp. 3d 698 (C.D. Cal. 2020) ............................................................... 10

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

**Statutes**

29 U.S.C. § 1104(a)(1) ................................................................................................................ 13


**Regulations**

29 C.F.R. § 2560.503-1(h)(3)(iii) ............................................................................................... 13

29 C.F.R. § 2560.503-1(h)(4) .................................................................................................... 13

## I. INTRODUCTION

Unum's rationale for terminating Ms. Haag's long-term disability benefits was that she was suffering from back pain, she underwent microdiscectomy surgery to address that pain, the surgery was performed without complications, and thus at the end of the surgery recovery period she was no longer disabled. Unum maintains this story in its opening brief.

In an ideal world, this is what would have happened. However, the record indicates otherwise. While Ms. Haag initially felt better after the surgery, her pain quickly returned. This pain was confirmed by multiple physicians, including her primary treating physician, Dr. Manvelyan, who vouched for Ms. Haag's credibility, informing Unum that Ms. Haag "has always been a very reliable and trustworthy patient" who "has…never exaggerated or oversold her impairments in any way" and "has been consistent in her reporting of the symptoms." Ms. Haag's pain was confirmed by physicians who noted her antalgic gait and performed physical examinations showing tenderness and guarding due to pain. A third-party functional capacity evaluation further demonstrated Ms. Haag's impairment.

Fortunately, Ms. Haag discovered why her pain had continued. Doctors identified a labral tear in her hip, which was surgically repaired in September of 2021. After recovering from this surgery, and moving to Northern California, she was able to return to work in August of 2022. Ms. Haag provided Unum with documentation of this surgery during the appeal process, but Unum refused to review it for the sole reason that it was "not time relevant." Unum never provided this information to any medical professional, intent on maintaining its narrative that Ms. Haag's real problem was with her lumbar spine and that her microdiscectomy had solved that problem.

John Maynard Keynes famously said, "When the facts change, I change my mind. What do you do?" Unum's answer was to dig in its heels. The record shows that Ms. Haag continued to experience pain and remain disabled until her hip surgery resolved her issues. Unum's competing theory is not supported by the record, and its refusal to consider alternatives shows that it did not review Ms. Haag's claim in good faith. The Court owes no deference to Unum's decision on de novo review, and thus it should find that the preponderance of the evidence weighs in favor of Ms. Haag and award her the disability benefits to which she is entitled.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## II. <u>POINTS AND AUTHORITIES</u>

### A. The Standard of Review Is De Novo

In her opening brief, Ms. Haag asserted that the appropriate standard of review in this case is de novo. In its opening brief, Unum agrees. Unum's Brief at 10 ("the Court will review the decision *de novo*"). As a result, Unum's decision to terminate Ms. Haag's disability benefits is not entitled to any deference and Ms. Haag will prevail if she can demonstrate by a preponderance of the evidence that she is entitled to benefits under the Policy. *Opeta v. Northwest Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) ("If de novo review applies, '[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.'" (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc))).

### B. Unum's Arguments Do Not Justify Its Decision to Terminate Ms. Haag's Benefits

#### 1. <u>Ms. Haag's Prior Ability to Work Through Her Pain Does Not Invalidate Her Disability Claim</u>

Unum contends that Ms. Haag was able to work with pain before her date of disability, and in fact returned to work part-time for a couple of months with her pain, and thus cannot have been disabled from that pain. Unum's Brief at 11 ("Haag's complaints of pain were longstanding, occurring 3+ years before the 2019 date of disability, yet she had been able to continue working").

This argument suffers from three problems. First, obviously, pain is not static and can deteriorate. The fact that Ms. Haag was able to work with pain for several years does not mean that she is forever prohibited from becoming disabled due to that pain. Impairments are often progressive and/or degenerative, and thus a tolerable condition can become debilitating over time. During that time it may be physically possible to keep working even though doing so is medically inadvisable. Indeed, many courts have held that it is possible to be legally disabled and working at the same time. *See Hawkins v. First Union Long Term Disability Plan*, 326 F.3d 918 (7th Cir. 2003) (there is no "logical incompatibility between working full time and being disabled from

working full time"); *Mabry v. Travelers Ins. Co.*, 193 F.2d 497, 498 (5th Cir. 1952) ("one may work to keep the wolf away from the door though not physically able to work").

For the same reason, the fact that Ms. Haag was able to return to work part-time for a short period also does not assist Unum. *See Ebert v. Reliance Standard Life Ins. Co.*, 171 F. Supp. 2d 726, 736 n.5 (S.D. Ohio 2001) ("While it is true Plaintiff returned to work for an eleven month period after her initial claim of disability, her diligence in attempting to return to work at a job which she held for over twenty years does not prevent her from claiming long-term disability, if she qualifies for such under the Plan."); *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 392 (3d Cir. 2003) ("A claimant's return to work is not dispositive of his or her disability").

Second, the record in fact confirms that Ms. Haag's condition grew worse over time. In the fall of 2018, Ms. Haag began suffering from "achy or sharp pain" which started "shooting into R leg and up R side. It can shoot down into toes." AR 1941. By May of 2019, she was still able to work, but she had to take sick days occasionally. AR 1941 ("However, sometimes the pain is so irritating that she needs to call off of work."). By August of 2019, Ms. Haag was waking up in significant pain and unable to sleep because of her pain. AR 58, 98, 299. It was at this point that Dr. Manvelyan finally recommended that Ms. Haag stop working. AR 299. Thus, while Ms. Haag's back pain may not have been disabling in late 2018 or early 2019, by August of 2019 it was clear that her condition had intensified, thus justifying her leaving work.

Third, and most importantly, Unum's complaint that Ms. Haag could not have been disabled due to her pain is belied by the fact that Unum itself paid Ms. Haag benefits for that pain. It is undisputed that Unum approved Ms. Haag's claim for the time period from February 7, 2020 to April 27, 2020. AR 882, 884-93. Thus, Unum has already recognized that Ms. Haag suffered from significant pain that warranted a finding of disability. The only question is what happened on April 27, 2020 to change Unum's mind. Unum's answer is that Ms. Haag had recovered by that date, which is incorrect for the reasons discussed in the next section.

### 2. Ms. Haag's Surgery Did Not Resolve Her Pain, and Thus She Remained Disabled

As Ms. Haag explained in her opening brief, the medical records show that she suffered from pain that intensified over time, which she tried to address through conservative means at first, and then by lumbar microdiscectomy surgery in January of 2020. AR 483-84. At the time this surgery made sense because an August 2019 lumbar MRI showed that she had a 3.5 millimeter central posterior disc protrusion at the L5-S1 level. AR 333. However, the record shows that while this surgery offered temporary relief, Ms. Haag's pain continued, and this was because Ms. Haag also had an undiagnosed labral hip tear. Once this problem was surgically addressed in September of 2021, and after a course of physical therapy, Ms. Haag was finally able to return to work in August of 2022. AR 2519, 2549-51.

In its brief, Unum essentially attempts to rewrite the narrative of Ms. Haag's disability by contending that Ms. Haag's problem the entire time was lumbar in nature, her January 2020 surgery resolved that problem, and thus she should have returned to work after the prescribed surgery recovery time period. Unum contends that the January 2020 surgery was "benign" and "successful," and thus after April of 2020 Ms. Haag could not possibly still be disabled. Unum's Brief at 7-8, 13.

At the outset, Unum's characterization of Ms. Haag's surgery as "benign" is unfair. Unum relies on Dr. Manvelyan for this description, as she noted in her January 7, 2020 pre-operative visit, "Discussed the purpose of microdiscectomy being a relatively benign procedure and relatively painless recovery." AR 783. Obviously, this was an attempt by a physician to reassure a concerned patient and should be interpreted in that light, especially given the use of the word "relatively" twice. Furthermore, Dr. Manvelyan later clarified what she actually believed about Ms. Haag's surgery when she informed Unum that she considered it an "invasive procedure" which was accompanied by "medications with numerous unpleasant side effects." AR 1021. *See Shaw v. Berryhill*, No. CV 16-06969 AFM, 2017 WL 7836615, at *3 (C.D. Cal. Oct. 23, 2017) ("It is widely acknowledged that…spinal surgery is a risky treatment with uncertain benefits").

4
PLAINTIFF'S RULE 52 OPPOSITION AND REPLY BRIEF

In any event, the medical records do not support Unum's narrative that the surgery was "successful." On April 27, 2020 – the date Unum terminated benefits – Dr. Pradhan, who performed the surgery, conducted what he thought would be his last post-operative evaluation of Ms. Haag. AR 126 ("The next follow-up visit with me will be as needed."). Dr. Pradhan noted that the incision was healed and that Ms. Haag no longer needed the back brace she had been wearing since the surgery. However, all was not well. Although Ms. Haag initially "felt better after surgery," she had been unable to complete her course of physical therapy due to the COVID epidemic, and her "pain has come back on and off." AR 126. Dr. Pradhan specifically noted that he did not think Ms. Haag should return to work: "I would extend her disability until she finishes her PT." AR 126.

Ms. Haag returned to Dr. Pradhan on August 5, 2020, at which time it was clear that Ms. Haag had not recovered as expected. AR 1089. His physical examination revealed tenderness and guarding. AR 1091. Dr. Pradhan recorded that Ms. Haag's pain still "has come back on and off," and encouraged her to "exhaust non-surgical treatments." While Dr. Pradhan felt that his work was done – "I will continue to follow the patient for surgical issues" – he conceded that he needed to "recruit[] the help of our PM&R [physical medicine and rehabilitation]/Pain experts." AR 1091. He still recommended that Ms. Haag remain on disability while her physical therapy continued. AR 1089. Later that month, Dr. Pradhan informed Unum that Ms. Haag was suffering from "delayed healing." AR 682.

Dr. Manvelyan's records also show that Ms. Haag's surgery had only provided a brief respite, and that her pain had returned. On April 24, 2020, just three days before the benefit termination date, Dr. Manvelyan recorded that Ms. Haag had right leg pain and "pin and needles" all the way down to her toe, "at times the pain is 6/10," even though "she has been following the activity restrictions and doing home stretching exercises." AR 323. Dr. Manvelyan advised Ms. Haag to "reconsider/postpone" her return to work, and referred her to Dr. Linane, who noted on May 20, 2020 that Ms. Haag "continues to have back pain, unable to return to work due to tingling in her foot, and deep aching pain down her right side…. She feels burning pain when standing for prolonged periods." AR 664.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1     Contemporaneous physical therapy records also showed that Ms. Haag was still suffering after her surgery. In March of 2020, physical therapy repeatedly noted, "She currently has limitations in [range of motion], strength, and has apprehension with all movements." AR 1264, 1267, 1270. This assessment continued in May of 2020, when Ms. Haag reported that "she has been frustrated with the progress of her lower back." AR 1272-73. In June of 2020, she was "experiencing pain that is still the same if not more." AR 1275.[1]

    While Ms. Haag's difficulty in recovering from her microdiscectomy was certainly confusing at the time – to both Ms. Haag and Unum – it became clear that the surgery did not resolve her issues because the root of her problem was her later-diagnosed labral tear. This tear was also surgically addressed and allowed Ms. Haag to finally return to work. Unum rejects this explanation, however, arguing that the "contention that the hip labral tear was always her underlying condition is based on her conclusion and not offered as a medical opinion." Unum's Brief at 13. As Unum acknowledges, however, Dr. Jackson, who repaired the labral tear, noted in September of 2021 Ms. Haag's "2-year history of pain in her right hip," which dates to when Ms. Haag first stopped working in August of 2019. AR 2542. The fact that the lumbar surgery did not allow Ms. Haag to return to work, while the hip surgery did, should be sufficient to demonstrate the root cause of her disability.

    In any event, Unum should not be permitted to complain about any evidence offered by Ms. Haag regarding her hip surgery, or how it should be medically interpreted, because Unum disregarded this evidence when Ms. Haag provided it to Unum. Unum argues that it "reviewed Plaintiff's submission and found that it did not change its prior claims determination," Unum's Brief at 9, but there is no evidence in the record that Unum medically reviewed it at all. Unum's file shows that it received the relevant records on February 24, 2022, AR 2533, and the next substantive entry is its denial letter on March 14, 2022, AR 2557. There is no note by any physician, nurse, or even any claims personnel, evaluating or summarizing these records.

---

[1] Unum cites a March 10, 2020 physical therapy note in which Ms. Haag reported a pain level of "1." AR 1263. However, that same note shows that her pain ranged up to 7, and she reported pain at that level in June through August of 2020. AR 1276, 1310, 1321, 1332.

6

PLAINTIFF'S RULE 52 OPPOSITION AND REPLY BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

In its denial letter, Unum stated, "We find the new information you submitted is not time relevant to the decision that Ms. Haag was no longer disabled per the terms of the policy as of April 27, 2020. While we understand she had labral tear repair surgery, such surgery was approximately 17 months after the claim closure." AR 2561. Again, there is no record of any medical opinion supporting this conclusion, and Unum has not explained why a 2021 surgery cannot be "time-relevant" to a 2020 claim closure if that surgery supports the conclusion that the 2020 closure was wrong.

In short, Unum rushed to the conclusion that Ms. Haag had a back problem, she had back surgery to fix that problem, and therefore she could no longer be disabled after the prescribed recovery period. Unum ignored all evidence to the contrary, to the point that when Ms. Haag provided an alternate explanation for her pain with supporting medical records, Unum refused to even refer those records to a medical professional for review. This decision was wrong, and thus the Court should not uphold it on de novo review.

### 3. Unum Fails to Impugn Ms. Haag's Credibility

Although Unum does not directly attack Ms. Haag's credibility, its brief contains numerous comments which are designed to raise suspicion about whether her medical condition was genuine.

However, as Ms. Haag explained in her opening brief, there are numerous reasons why her complaints of pain should be believed. First, Ms. Haag's primary treating physician, Dr. Manvelyan, vouched for her, reporting that Ms. Haag "has always been a very reliable and trustworthy patient" who "has been truthful in her reporting of her physical conditions and never exaggerated or oversold her impairments in any way." AR 1021. Second, the FCE supported Ms. Haag's credibility, finding that she gave maximum effort during a test that concluded she was too impaired to return to work. AR 1009. Third, Ms. Haag's own conduct supported her complaints. She attempted to return to work in 2019 before she was physically ready, she commented on several occasions that she was disappointed that she could not return to work and was worried about her career, and she sought treatment from numerous physicians and underwent surgical procedures in an effort to control her pain. AR 301, 777, 1021 (Dr. Manvelyan: "I would not

imagine one can subject herself to an invasive procedure, medications with numerous unpleasant side effects and hours and hours of time consuming physical therapy sessions, unless she was truly in pain"). Dr. Manvelyan specifically stated that Ms. Haag "loves her work" and "impressed me as a very dedicated employee who has a high sense of duty to her colleagues and her commitments." AR 1021. In short, there is no evidence in the record to suggest that Ms. Haag was somehow malingering or manufacturing her complaints in order to avoid working.

Unum's arguments to the contrary are weak in comparison. For example, Unum notes more than once that Ms. Haag is a "young claimant," even including this characterization in one of its headings. Unum's Brief at 10 ("The Medical Evidence Does Not Support Total Disability for this Young Claimant").[2] At no point does Unum explain why this information is relevant. Unum appears to be insinuating that it is unlikely that Ms. Haag was genuinely disabled because she was "young." However, Ms. Haag's age is not relevant, as the Policy does not contain any age-related provisions that affect disability determinations. Furthermore, even "young" people can certainly become disabled. Unum itself agreed that Ms. Haag was disabled for several months, and it concedes in its brief that Ms. Haag had "objective findings on both her cervical spine and lumbar spine prior to disability" which supported her initial claim. Unum's Brief at 12.

Unum further notes that Ms. Haag has returned to work "for a different employer in a similar capacity" since this action was filed. (Ms. Haag is currently working as a Lab Reporting Analyst in San Mateo.) Unum's Brief at 3, 10, 11. Indeed, Unum considers this information so important that it filed a declaration confirming this fact, even though evidence outside the administrative record is typically inadmissible in ERISA cases. *See Opeta*, 484 F.3d at 1217 (extrinsic evidence in de novo ERISA benefit cases is "considered only under certain limited circumstances"). Unum contends that Ms. Haag's return to work undercuts her "claims to suffer impairment[.]" Unum's Brief at 11.

---

[2] Unum correctly notes that Ms. Haag was 34 when she submitted her disability claim; Plaintiff mistakenly misstated her age as older in her opening brief. As explained above, however, this distinction is immaterial.

8

PLAINTIFF'S RULE 52 OPPOSITION AND REPLY BRIEF

On the contrary, Ms. Haag's return to work is entirely consistent with her medical history and supports her credibility. As explained in her opening brief, and above, the record shows that the reason Ms. Haag's disability continued, even though she underwent "successful" back surgery, was that her back was not the primary driver of her pain. Instead, it was an undiagnosed labral tear in her hip. AR 2519, 2549-51. Once this tear was repaired, in September of 2021, and Ms. Haag had time to recover and complete her move from Southern California to Northern California, she was able to start working again in August of 2022. As a result, the fact that Ms. Haag was able to eventually return to work only supports her credibility. One would expect a malingerer to find reasons to avoid returning to work altogether.

Unum also suggests that Ms. Haag's back and hip pain were not the "real" cause of her disability, stating that "there may have been other reasons/motivations beyond lumbar complaints explaining Haag's reticence to return to work at Huntington." Unum's Brief at 12. Unum implies that work at Huntington was "stressful" and thus perhaps Ms. Haag did not want to return to that environment. Unum's Brief at 3.

The difficulty with this argument is that it has no support in the record. While it is true that Ms. Haag informed Dr. Manvelyan that her job was stressful because of under-staffing, AR 299, the record clearly shows that Ms. Haag repeatedly informed Dr. Manvelyan that she was eager to return to work as soon as possible. *See* AR 301 ("feels guilty" about calling in sick), 777 ("stressed about the pain, missing work and about her future with her job"), 1021 ("felt compelled to return to work" during her rehabilitation because there was a staffing shortage). Dr. Manvelyan herself explicitly told Unum that Ms. Haag "impressed me as a very dedicated employee who has a high sense of duty to her colleagues and her commitments." AR 1021.

Nor is it true that Dr. Manvelyan "actually thought that Haag's problem was caused by stress," as Unum contends. Unum's Brief at 5, 11 (contending that "Dr. Manvelyan's disability certification in August 2019 was prompted by job stress"). When Ms. Haag stopped working in August of 2019, Dr. Manvelyan's office note mentioned work stress, but the primary recorded reason for Ms. Haag's visit was "back pain, fatigue and dizziness since last visit… She is unable to sleep because of the pain." AR 299. Dr. Manvelyan did not dismiss these complaints, and in

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

fact prescribed two medications to combat Ms. Haag's pain and headaches, Tramadol and Flexeril, which she would not have done if she thought Ms. Haag had no physical issues. AR 300. Subsequent treatment notes by Dr. Manvelyan offer no support for the argument that she thought stress was Ms. Haag's primary problem. *See* AR 301, 303, 305, 307, 311, 313, 315, 317 (all focusing on Ms. Haag's ongoing back pain issues and only intermittently mentioning stress). In any event, back surgery performed by Dr. Pradhan, AR 483-84, followed by diagnoses of piriformis syndrome by Dr. Myers, AR 1096-98, and a labral tear in her hip, repaired by Dr. Jackson, AR 2549-51, should be more than sufficient to dispel any notion that Ms. Haag's problem all along was "stress."

In short, Unum appears to be contending that Ms. Haag manufactured her disability as a way to avoid returning to her "stressful" job. However, there is no reason to question Ms. Haag's integrity or credibility, as her physical impairments were confirmed by numerous physicians, and at every opportunity she sought ways to improve her condition so she could return to work, which she eventually did once she received the appropriate treatment.

### 4. Dr. Norris' Review Is Entitled to Little Weight

In her opening brief, Ms. Haag noted that Dr. Norris' opinions are routinely criticized by the federal courts in ERISA benefit cases such as this one, and his repeated argument that evidence is not "time-relevant" has specifically been called out as inadequate on more than one occasion. *See Chicco v. First Unum Life Ins. Co.*, 2022 WL 621985, at *4 (S.D.N.Y. 2022); *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698, 711 n.11 (C.D. Cal. 2020).

Indeed, as the Ninth Circuit has noted, "It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability."). *See also Luu v. First Unum Life Ins. Co. of Am.*, No. SACV 18-00970 JVS(JDE), 2019 WL 6622848, at *14 (C.D. Cal. Nov. 14, 2019) (reports post-dating denial "relate to the same disputed injuries and condition that are the basis of Luu's disability claims" and thus "are relevant for purposes of corroborating evidence from the relevant time period");

As a result, Ms. Haag's FCE, and the medical records regarding her hip surgery, all of which corroborated her disability claim, cannot be disregarded simply because they post-date the benefit termination date. To be sure, Dr. Norris did not make this argument regarding Ms. Haag's hip surgery because the surgery had not yet taken place. Nevertheless, in its appeal denial, Unum took its cue from Dr. Norris and made the same "not time-relevant" argument regarding Ms. Haag's hip surgery as Dr. Norris did regarding her FCE. AR 2561 ("We find the new information you submitted is not time relevant").[3] Whether made by Dr. Norris or by Unum itself, the refusal to assign weight to evidence on "time-relevance" grounds should be rejected by the Court, especially when that evidence (1) objectively demonstrated Ms. Haag's functionality, in the case of the FCE, and (2) provided insight into why Ms. Haag's recovery from her microdiscectomy surgery was unsuccessful, in the case of the hip surgery records.

In its brief, Unum contends that Dr. Norris' opinions extended beyond "time-relevant" arguments. Specifically, Unum relies on Dr. Norris' identification of "inconsistencies" in Ms. Haag's medical records. Unum's Brief at 1, 15, 19.

However, these "inconsistencies" are exaggerated. For example, Dr. Norris complained that the "abnormal gait noted on 1/13/21 and 1/14/21 during the FCE was inconsistent with the 1/19/21 Cardiology OVN that documented a normal gait and noted that she was able to exercise." AR 2455. These are not equivalent reports. The cardiologist was evaluating Ms. Haag for issues related to tachycardia (high heart rate), AR 1066, and was not evaluating her gait or orthopedic issues or pain, which the FCE was specifically designed to test. Indeed, the reason she was referred to cardiology was because the FCE was so difficult for her. AR 1062 ("She had a functional activity assessment, and was noted to become easily tachycardic, with a heartrate of 160. She was referred to cardiology, and was seen by Dr. Luu"). Moreover, the cardiologist acknowledged Ms. Haag's ongoing pain issues, noting that the cause of her tachycardia was "probably multifactorial due to meds, back pain, neuropathy, and possibly POTS." AR 1069.

---

[3] As discussed above, Unum does not explain why the records from that surgery were not referred to Dr. Norris, or any medical professional, before it denied Ms. Haag's appeal.

11

PLAINTIFF'S RULE 52 OPPOSITION AND REPLY BRIEF

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

As for Ms. Haag's ability to exercise, she informed her cardiologist that she "walks for exercise," AR 1052, but contemporaneous records showed that she could not do much more. Dr. Noritake, Ms. Haag's rheumatologist, noted that Ms. Haag's physical therapy sessions "have become quite uncomfortable and painful, feeling 'beat-up' after her sessions, and not certain that she is noting any further benefit…. She tires easily, and has not been able to exercise to any significant degree." AR 1062. In any event, Unum does not explain how the ability to walk for exercise is inconsistent with disability. *See Rowell v. Aviza Tech. Health & Welfare Plan*, No. C 10-5656 PSG, 2012 WL 1672497, at *16 (N.D. Cal. May 14, 2012) (judgment rendered for plaintiff where he was able "to engage unrestricted in low-impact and undemanding activities for a few hours at a stretch").

Dr. Norris also complained that Ms. Haag's examination findings were not consistent with the level of impairment she reported. However, he admitted that Ms. Haag suffered from tenderness, guarding, reduced range of motion, and positive straight leg tests, as well as a positive femoral nerve traction test, and "exquisite tenderness" of the sciatic notch and piriformis. AR 2455. All these findings were quite consistent with Ms. Haag's ongoing complaints of pain. Dr. Norris dismissed these objective physical examination findings because "her normal LE strength and normal gait did not support functional impairment." AR 2455. However, the record shows that Ms. Haag's gait was routinely recorded by Dr. Pradhan as antalgic, i.e., abnormal, including at the time of Unum's benefit termination in April of 2020. *See* AR 138 (January 3, 2020), 131 (February 14, 2020), 128 (March 9, 2020), 125 (April 27, 2020), 1090 (August 5, 2020). Furthermore, Ms. Haag was disabled by pain, not by a lack of strength, and thus "normal" strength tests are not necessarily revelatory of disability.

As explained in Ms. Haag's opening brief, the primary problem with Dr. Norris' report is that it focused on her lumbar surgery and the expected outcome for that surgery, without taking into consideration her specific results and symptoms. Dr. Norris concluded, "There was no evidence of significant complications following her Jan 2020 single level lumbar surgery, and, in the absence of specific complications, a 3-month recovery period would be sufficient to resume light work activity." AR 2456.

This conclusion ignored the fact that Ms. Haag's pain had continued, and even increased at the time of Unum's benefit termination. Indeed, Dr. Norris was aware that Ms. Haag had not recovered as expected, admitting in his report that her physical therapy after surgery "did not correlate with a significant improvement in her reported [symptoms]" and that she had "minimal response to PT." AR 2456. However, instead of concluding that Ms. Haag's "minimal response" meant that the surgery had not worked as expected, and that there might be another medical cause for her symptoms – which made sense given her ongoing pain and continued treatment with Drs. Manvelyan, Linane, and Myers – Dr. Norris simply assumed that Ms. Haag's symptoms were not genuine. This is evident from his comment regarding Ms. Haag's other conditions, which he claims "likely contributed to her overall *perception* of pain," AR 2456 (emphasis added), as if her pain was not actually genuine. However, as explained above, there is no reason to doubt that Ms. Haag's pain was genuine because nothing in the record impugns her credibility.

Of course, at the time, Dr. Norris did not have the records from Ms. Haag's hip surgery because it had not yet occurred. If they had been provided to Dr. Norris, they hopefully would have caused him to reevaluate Ms. Haag's condition and realize that her failure to recover from her microdiscectomy had a legitimate medical explanation.[4] However, as discussed above, Unum inexplicably never gave Dr. Norris – or any other medical professional – these records before rejecting her appeal.[5] This failure suggests that Unum had the report it desired from Dr. Norris, and wanted to preserve its viability in order to justify its benefit denial. This is not the type of self-interested action that should be tolerated in an ERISA fiduciary. *See* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants

---

[4] Indeed, Unum's prior medical reviewer, Dr. Lyon, noted that "the insured's complaints do not appear associated with her lumbar disc bulge or discectomy," AR 689, which should have put Unum on notice that there was another medical reason for her pain. Instead, Unum simply assumed that Ms. Haag was dissembling.

[5] This failure arguably constituted a violation of 29 C.F.R. § 2560.503-1(h)(3)(iii), (h)(4) (requiring claim administrators, "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment" to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment").

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

and beneficiaries and…for the exclusive purpose of…providing benefits to participants and their beneficiaries").

### 5. If Ms. Haag Prevails, There Is No Need to Remand for an "Any Occupation" Disability Determination

Finally, Unum contends that if Ms. Haag prevails, the Court should only award her benefits from April 27, 2020, when Unum terminated her benefits, to February 7, 2022, which is when the definition of disability under the Policy changes. (For the first 24 months of benefits, a claimant must show that she is disabled from performing the duties of her "regular occupation," but after 24 months, a claimant must show that she is disabled from performing the duties of "any occupation" for which she is reasonably fitted by education, training, or experience. AR 2660.) Unum suggests that the Court should remand the case back to Unum for a determination regarding the "any occupation" time period. Unum' Brief at 20.

Ms. Haag disagrees. Ms. Haag returned to work in August of 2022, so the "any occupation" time period at issue is only six months – from February to August of 2022. Furthermore, Ms. Haag provided documentation to Unum demonstrating that she underwent her hip surgery in September of 2021, followed by physical therapy, thereby extending her disability. AR 2519, 2526, 2549-51. Unum will likely contend that it should be allowed to review this documentation in order to make a disability determination, but the record shows that it failed to respond to this evidence during the appeal process, and thus it should not be permitted to make any new arguments now regarding its persuasiveness. *See Groch v. Dearborn Nat'l Life Ins. Co.*, 497 F. Supp. 3d 826, 843 (C.D. Cal. 2020) ("the appropriate remedy in a case where benefits have been awarded and terminated is that benefits should be awarded until the administrator properly applies the plan's provision," even if "that period of time spans the date in which the definition for disability changed in the Policy").

## III. CONCLUSION

The record shows that Ms. Haag's microdiscectomy surgery did not resolve her ongoing pain, and thus Unum erred when it concluded she was no longer impaired after a typical surgery recovery period. The record further shows that because of Ms. Haag's ongoing pain, she was unable to return to work at her job as a clinical lab scientist, which required her to frequently stand, walk, twist, as well as lift items up to 50 pounds and bend and stoop. AR 78. Because Ms. Haag has demonstrated these facts by a preponderance of the evidence, the Court should issue judgment in her favor and order Unum to pay disability benefits through August of 2022, when she was able to finally return to work.

DATED: June 29, 2023								KANTOR & KANTOR, LLP

By:	*/s/ Peter S. Sessions*
	Peter S. Sessions
	Attorney for Plaintiff
	Rebecca Haag