UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REBECCA HAAG,

        Plaintiff,

   v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant.

Case No. 22-cv-03130-TSH

**ORDER RE: CROSS-MOTIONS FOR
JUDGMENT**

## I.    INTRODUCTION

Plaintiff Rebecca Haag sued Defendant Unum Life Insurance Company of America ("Unum") to recover long-term disability ("LTD") benefits under a policy issued by Unum and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.  On May 27, 2022, Haag filed this action under 29 U.S.C. § 1132(a)(1)(B).  ECF No. 1.  Unum filed an Answer to the Complaint on August 1, 2022.  ECF No. 14.  Pending before the Court are the parties' cross-motions for judgment pursuant to Federal Rule of Civil Procedure ("Rule") 52(a).  *See* ECF Nos. 26, 28.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES IN PART** Unum's motion and **GRANTS IN PART AND DENIES IN PART** Haag's motion for the following reasons.[1]

---

[1]  The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 10, 18.

## II.    LEGAL STANDARD

Rule 52(a) provides that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a)(1).  Unlike in a Rule 56 motion for summary judgment, in a trial on the record pursuant to a Rule 52 motion the Court will ask "not whether there is a genuine issue of material fact, but instead whether [the plaintiff] is disabled within the terms of the policy."  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc).  Also unlike summary judgment, a Rule 52(a) motion requires the Court to "make findings of fact" and "evaluate the persuasiveness of conflicting testimony [to] decide which is more likely true."  *Id.*

## III.    FINDINGS OF FACT

### A.    Haag's Work Experience

Haag started working for Huntington Memorial Hospital in January 2015 as a Clinical Lab Scientist.  Administrative Record ("AR") 11, 276.  At the time she started she was 29 years old.  AR 59.  Haag's job required her to perform tests and provide results in accordance with established procedures.  AR 76.  She also performed preventive maintenance on equipment and provided training to technicians and trainees.  AR 76.  As part of her position, Haag had to sit frequently, defined as between one-third and two-thirds of the day, as well as stand and walk frequently.  AR 78.  Haag frequently had to twist her body as well as her neck and lift 10 lbs. or less.  AR 78.  Haag often, defined as up to one-third of the day, had to lift 11-25 lbs. and 26-50 lbs.  AR 78.

### B.    The Policy

Huntington Memorial Hospital's long-term disability benefit plan is insured by a group policy (the "Policy") issued by Unum starting January 1, 2002.  AR 2607, 2678.  Under the Policy an employee is considered "disabled" where:

> [Y]ou are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

> [Y]ou have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

2

> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

AR 2660.

Unum defines "usual occupation" in comportment with the California Department of Insurance's direction as:

> The definition of disability contained in your policy references a period during which you are unable to perform the material and substantial duties of your own occupation. You will be determined to be disabled from your usual occupation when you are rendered unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.

> Your usual occupation may be defined in the policy as it is performed in the national economy. However, we will evaluate your usual occupation to be the "occupation you are routinely performing for your Employer when your disability begins". [sic]

AR 889-90.

## C.     Haag's Condition and Unum's Administration of LTD Benefits

Haag started having lower back pain with right-side radiculopathy in 2016. AR 246. The pain picked up in November 2018, and Haag began seeing a physical therapist starting around May 2019. AR 1941. She reported to the physical therapist at her initial assessment that she was currently at a 4/10 level of pain, and that her pain could reach a 7/10 or 8/10 level, or fall as low as a 1/10. AR 1941. Haag noted that when the pain was particularly irritating she needed to call off work. AR 1941.

On August 2, 2019, Haag woke up with severe lower back pain. AR 58. On the same day, Haag informed her primary care physician, Dr. Marina Manvelyan, that she was "unable to sleep because of the pain." AR 299. Dr. Manvelyan wrote Haag a note to stay off work from August 2, 2019 through August 12, 2019. AR 300. Dr. Manvelyan referred Haag to physical therapy and for an orthopedic consultation, and Dr. Ben Pradhan, an orthopedic surgeon, met with her. AR 302, 304, 155. Thereafter, Dr. Manvelyan completed forms to extend Haag's leave, with an anticipated return date of October 6, 2019. AR 304. Haag did not work from August 6, 2019 through October 5, 2019. AR 12.

United States District Court
Northern District of California

1        Haag had an MRI on August 19, 2019, which showed spondylosis, a disc bulge of 3.5 mm

2  at L5-S1 disc, and early degenerative disc disease, although no focal root impingement.  AR 355,

3  333.  Dr. Pradhan also found that the MRI indicated spinal space compromise and neural

4  compression.  AR 155.  Haag participated in physical therapy from August 27, 2019 through

5  November 5, 2019.  AR 2275-2315.  In her initial August 27, 2019 visit, Haag reported that her

6  back pain symptoms increased with standing or sitting roughly 30 minutes.  AR 2275.  Over

7  September and October 2019, Haag reported some improvement, and even reduced her

8  medication.  *See* AR 2292, 2294, 2301.

9        On October 3, 2019, Dr. Manvelyan reported that Haag's lower back pain was much

10  improved, and she would return to work the next Monday.  AR 308.  Haag worked full-time from

11  October 6, 2019 through October 10, 2019.  AR 12.  On October 10, 2019, however, Haag

12  reported to Dr. Manvelyan that her lower back pain had reappeared soon after returning to work

13  and that she was in severe pain.  AR 309.  Dr. Manvelyan concluded that the conservative

14  treatment for the lower back pain had failed, and that Haag "needs to stay off work" to address the

15  right sciatica and lumbar radiculopathy.  AR 310.  On Haag's October 24, 2019 visit with Dr.

16  Manvelyan, Dr. Manvelyan indicated that Haag's pain was persisting and she required "quite a bit

17  of pain meds to control it."  AR 312.  Dr. Manvelyan noted that Haag was not ready to work and

18  would need more definitive treatment for the pain.  AR 312.  Haag did not work from October 11,

19  2019 through November 6, 2019.  AR 12.

20        On October 14, 2019, Dr. Pradhan noted Haag "has been doing Physical Therapy, but

21  without significant help.  She tried to return to work but was unable to bear the pain.  Her pain is

22  worse now, going down the right leg."  AR 356.  Dr. Pradhan stated Haag was a candidate for

23  selective spinal injections.  AR 356.  On October 28, 2019, Haag received a transforaminal

24  epidural injection to her right L5/S1 disc on her back.  AR 528-529.  She resumed work on

25  modified duty starting November 7, 2020, working three days a week for eight hours a day.  AR

26  12, 405.  She initially reported a good response to the injection, but on December 13, 2019, Dr.

27  Manvelyan recorded that her symptoms had returned.  AR 781.  Haag received another epidural

28  injection on December 27, 2019, and stopped her part-time work on January 1, 2020.  AR 12, 524.

1    On January 3, 2020, Dr. Pradhan indicated that Haag was "getting worse," had "exhausted

2  all reasonable non-surgical treatment modalities, and ha[d] become a surgical candidate."  AR

3  1117.  On January 30, 2020, Dr. Pradhan performed a lumbar microdiscectomy and

4  decompression surgery at Haag's L5-S1 disc.  AR 483-484.

5    After the surgery, Haag received a brace to reduce her pain.  AR 133.  On February 14,

6  2020, Dr. Pradhan indicated that she was healing well.  AR 132.  On March 9, 2020, six weeks

7  post-surgery, Dr. Pradhan reported Haag's activity restrictions could be eased, but that bending of

8  the spine was to be limited.  AR 129.  Prior to returning to normal level of function, he

9  recommended that Haag start a physical therapy program.  AR 129.

10    Haag attended three physical therapy sessions before being delayed due to COVID-19.

11  AR 1104; 1261-1270.  On March 10, 2020, Haag reported to her physical therapist a best pain

12  level of 1/10, a worst pain level as 7/10 and a current pain level of 1/10.  AR 1263.  The next visit,

13  on March 13, 2020, Haag reported about a 5/10 back pain level.  AR 1266.  On March 16, 2020,

14  she reported a pain level of 4/10 and improved pain overall.  AR 1269-1270.

15    On April 24, 2020, Haag met with Dr. Manvelyan, and reported that she was experiencing

16  pain in her right leg, including pins and needles, and that the pain at times was a 6/10.  AR 323.

17  Dr. Manvelyan advised that she start gabapentin, as well as that she "reconsider / postpone the

18  work return date."  AR 324.

19    On April 27, 2020, Haag met with Dr. Pradhan for her 3-month post-operative visit.  AR

20  124-126.  Dr. Pradhan noted that Haag continued to improve and felt better after surgery, but that

21  her physical therapy was suspended.  AR 126.  He stated that she had been weaned off her brace,

22  but that her back pain came back on and off.  AR 126.  She received a positive result on the

23  femoral nerve traction test, as well as limited testing regarding her strength and range of joint

24  motion because of guarding.  AR 126.  Dr. Pradhan also recorded 5/5 on muscle strength, antalgic

25  gait, and normal motor exam results.  AR 125-126.  Dr. Pradhan stated that he would extend

26  Haag's disability until she finished physical therapy.  AR 126.

27    Haag also saw a neurologist, Dr. Avriel Linane, for her back pain.  AR 663-664.  Dr.

28  Linane noted on May 20, 2020, that Haag reported her pain had decreased since surgery but had

United States District Court
Northern District of California

United States District Court
Northern District of California

not resolved.  AR 663.  Haag reported burning pain when standing for prolonged periods, as well as tingling in her foot, deep aching pain down her right side, and difficulty bending over and squatting to the ground.  AR 663-664.  On May 20 and June 26, 2020, Dr. Linane recorded that Haag had 4/5 muscle strength in her right hip abductors and right hip extensors.  AR 661, 658.  Dr. Linane also documented normal stride and normal turn in Haag's gait.  AR 658, 661.  Dr. Linane noted that Haag's psychiatrist prescribed amitriptyline in relation to her lumbar disc herniation, but that it did not work so Haag stopped taking it.  AR 659.  Haag was taking Flexeril and Tylenol daily, as well as gabapentin but could not tolerate a higher dosage due to fatigue and headaches.  AR 657, 659.  On June 26, 2020, Haag advised Dr. Linane that the gabapentin helped with numbness, but that she still had back pain.  AR 657.  Dr. Linane referred Haag for a brain MRI, which came back normal.  AR 659.

On May 27, 2020, Haag reported to Dr. Manvelyan that she continued to have back pain and was afraid to go back to work based on this pain.  AR 791.  She told Dr. Manvelyan that she would not be able to stand for 15 minutes, stoop, lift more than 5 lbs., or bend over.  AR 791.  On June 1, 2020, Haag informed Dr. Manvelyan that although her disability was related to orthopedic issues, Dr. Manvelyan should fill out her disability paperwork.  AR 327.  Dr. Manvelyan completed the paperwork and listed the date Haag stopped working as August 2, 2019.  AR 35-37.  Dr. Manvelyan listed Haag's primary diagnoses impacting her functional capacity as low back pain, lumbar spondylosis, herniated L5-S1 disc, lumbar radiculopathy, and right-side sciatica.  AR 35.

Unum scheduled a phone call with Haag on June 10, 2020.  AR 97.  Haag reported that she was unable to sit for more than 15 to 30 minutes or stand more than 10 minutes without needing to change positions.  AR 99.  She stated she was advised not to bend or twist and that Dr. Pradhan advised her not to lift more than 5 lbs.  AR 99.  Unum found that a typical recovery from a single level microdiscectomy would be six weeks, however, Haag was not advised to wean out of her brace and start physical therapy until 6 weeks after the procedure and therefore a duration of disability until her April 27, 2020 follow-up with Dr. Pradhan could be supported.  AR 234.

Meanwhile, Haag had resumed physical therapy on May 26, 2020.  AR 1272.  Haag

United States District Court
Northern District of California

1 reported to the physical therapist no increase in pain, but said that she had been frustrated with the

2 progress of her lower back.  AR 1272.  On June 4, 2020, Haag reported her pain was still the same

3 if not more and rated her pain at a 7/10.  AR 1275-1276.  On June 8, 2020, Haag reported that her

4 pain had improved since the last session.  AR 1278.  On June 11, 2020, Haag reported less pain

5 overall and on June 15, 2020 the physical therapist noted improved symptoms.  AR 1281, 1286.

6 Haag reported no increase in pain on June 17, 2020, and improvement in her range of motion.  AR

7 1287.  Haag reported no increase in pain on June 23, 2020.  AR 1291.  On June 25, 2020, she

8 reported improved symptoms and some discomfort in her hip.  AR 1295.  On July 8, 2020, Haag

9 reported she was feeling better overall, but also had a present back pain level of 7/10.  AR 1308,

10 1310.  On July 13, 2020, Haag reported no increase in pain.  AR 1312.  On July 21, 2020, Haag

11 reported that her symptoms had worsened after a week of increased activity.  AR 1316.  On July

12 28, 2020, Haag reported that she still felt some discomfort and pain as well as more stiffness,

13 although the physical therapist noted improved symptoms since the week prior.  AR 1319-1321.

14 She reported her back pain level at a 7/10.  AR 1321.

15 　　　　On July 22, 2020, Haag met with Dr. Manvelyan who documented that Haag continued to

16 have pain in her right hip area and may consider a repeat MRI and an epidural shot.  AR 1041.  Dr.

17 Manvelyan noted that Haag continued to be disabled and was not ready to return to work.  AR

18 1041.

19 　　　　Dr. Pradhan referred Haag to physical medicine and rehabilitation specialist Dr. Jared

20 Myers, who saw Haag on July 31, 2020.  AR 1096-1097.  Haag reported a 7/10 pain level on the

21 day of the visit.  AR 1096.  Dr. Myers noted "exquisite sciatic notch / piriformis" and diagnosed

22 Haag with piriformis syndrome.  AR 1096-1097.  On August 4, 2020, he performed a piriformis

23 injection.  AR 1093-1094.  He also recommended possible repeat right L5 and S1 transforaminal

24 epidural steroid injections.  AR 1094.  Dr. Myers indicated the piriformis injection was medically

25 necessary because more conservative management options had failed.  AR 1094.

26 　　　　On August 4, 2020, Unum completed a vocational analysis and determined that Haag's

27 clinical lab scientist position was a light duty occupation.  AR 634-35.  Under this metric, she

28 would lift up to 20 lbs. of force occasionally, and/or up to 10 lbs. of force frequently.  AR 635.

7

She would frequently sit and occasionally stand and walk. AR 635. Frequently amounts to one-third to two-thirds of the day, or 2.5-5.5 hours in an 8-hour workday. AR 635. Occasionally amounts to up to one-third of the day, or 0-2.5 hours in an 8-hour workday. AR 635.

On August 5, 2020, Unum consultant Kay O'Reilly, RN, determined that Haag was disabled up until her April 27, 2020 visit with Dr. Pradhan. AR 645. O'Reilly found that at that point Haag had recovered from her surgery and that the limitations noted by Dr. Manvelyan were based on Haag's self-reported abilities and not based on exams performed by Dr. Manvelyan. AR 645. O'Reilly found that Dr. Pradhan indicated that Haag had recovered from surgery, and he released her from care as of April 27, 2020. AR 645.

On August 5, 2020, Haag saw Dr. Pradhan. AR 1089. He noted that he had extended Haag's disability until she finished the physical therapist but that her physical therapy had been delayed due to the pandemic. AR 1089. He recorded that her pain had come back on and off. AR 1089, 1091. Dr. Pradhan recommended Haag exhaust non-surgical treatments and recruited pain management experts. AR 1091. Dr. Pradhan noted that he would continue to follow Haag for surgical issues. AR 1091.

On August 10, 2020, Unum sent Dr. Manvelyan a letter asking if she endorsed restrictions and limitations for Haag or if she would defer to Dr. Pradhan as her orthopedic surgeon. AR 650. Dr. Manvelyan responded on August 27, 2020 stating Haag "is fully disabled and completely disabled from her job." AR 736.

Unum also requested information from Dr. Pradhan on whether Haag was medically precluded from performing light work. AR 674-675. On August 17, 2020, Dr. Pradhan responded that Haag "had not completed prescribed post-operative physical therapy post-surgery. Patient experienced delay in treatment due to COVID-19. Non-surgical follow up recommended with pain [management]. Delayed healing." AR 682.

On August 19, 2020, Unum consultant Todd Lyon, MD, completed an on-site patient review. AR 688-690. Dr. Lyon concluded that Haag did not report any significant change in symptoms following recovery from surgery, and that it did not appear that Haag's complaints were associated with the lumbar disc bulge, but rather he suspected more related to her prior diagnoses

8

1   of myofascial pain and fibromyalgia.  AR 689.  He did not believe that Haag would be precluded

2   from light duty activity.  AR 689.

3          On August 19, 2020, Dr. Manvelyan recorded that Haag had limited range of motion,

4   stiffness, and pain radiating to her right hip area, and she recommended that Haag follow up with

5   pain management.[2]  AR 829.  She also noted Haag had normal muscle strength 5/5 and normal

6   coordination, with her examination of the lumbosacral spine finding no tenderness to palpitation,

7   no pain, no swelling or edema, and normal lumbosacral spine movements.  AR 829.

8          On August 24, 2020, Unum consultant Steven Milos, M.D. also reviewed Haag's case.

9   AR 697-698.  Dr. Milos agreed with Dr. Lyon and found that Haag had a normal gait pattern and

10  no radiculopathy which would allow her to sit with occasional standing and walking.  AR 698.

11  Further, Haag had normal strength except mild right hip weakness, which would allow exertion of

12  up to 20 lbs. occasionally.  AR 698.

13         Haag initially reported a 75% relief of pain for the first three weeks after her piriformis

14  injection, reporting to her physical therapist on August 24, 2020 that she had improved pain.  AR

15  1085, 1327.  By August 31, 2020, however, Haag reported improved pain overall, but also

16  reported a back pain level of 7/10.  AR 1329, 1332.  On September 18, 2020, she reported to the

17  pain specialist that her current level of pain was a 6/10 and within the prior month her highest

18  level was 8/10 and lowest level was 6/10.  AR 1085-1086.  Haag started seeing rheumatologist Dr.

19  Dean Noritake in September 2020 related to her ongoing lower back pain and lower extremity

20

21  [2]  The Court cites here and thereafter to records from July 1, 2020 through September 15, 2020
22  provided from Washington Medical Group.  AR 825-834.  Unum received these records via fax on
    September 15, 2020.  AR 824.  The records document three "encounters," which the Court infers
23  to be medical appointments, on July 1, 2020, July 22, 2020, and August 19, 2020.  AR 826.  The
    documents provide headers delineating encounter 1, 2, or 3 (AR 827, 830, 832), but within their
24  contents include entries by Dr. Manvelyan dated September 15, 2020.  *See, e.g.* AR 828, 830, 832.
    The Court cannot say why there are entries dated September 15, 2020, the date the records were
25  faxed to Unum, and the Court does not have records showing Dr. Manvelyan had an appointment
    with Haag on September 15, 2020.  Given the composition of the materials, the delineation
26  between the three encounters, the identification on the first page of the materials that they refer to
    these three encounters, and the fact that the encounters include different, as opposed to
27  duplicative, information, the Court does not consider the September 15, 2020 date on some entries
    to be a statement about the dates physical assessments or exams were completed.  Rather, the
28  Court instead understands the information included in the documents to reflect notes and findings
    registered on the date of the encounter itself, meaning either July 1, 2020, July 22, 2020, or
    August 19, 2020.

1   joint pain.  AR 1061.  Starting September 15, 2020, Dr. Noritake prescribed her pregabalin for her

2   fibromyalgia although there were some issues with her insurance and pricing.  AR 1060, 1061,

3   1064.

4       Haag continued physical therapy from September 30, 2020 to February 18, 2021.  AR

5   2316-2383.  At her physical therapy appointment on September 30, 2020, Haag reported that lying

6   down on her left side was the most relieving and that walking was "OK."  AR 2316.  The physical

7   therapist noted "severe tension" on Haag's right side as well as pain on her right side during the

8   gait observations.  AR 2317.

9       On September 28, 2020, Unum consultant Dr. Lyon reviewed additional evidence from Dr.

10  Manvelyan and Dr. Pradhan from June 2020 through August 2020 and found that the records did

11  not support Dr. Manvelyan's conclusion that Haag was disabled.  AR 852-53.  Dr. Lyon spoke

12  with Dr. Manvelyan on October 12, 2020 and concluded that she had not provided any new

13  physical findings or diagnostics to support her opinion and there were no records related to Haag's

14  piriformis syndrome.  AR 865.  On October 15, 2020, Dr. Milos agreed with Dr. Lyon and

15  concluded that the additional evidence provided did not support disability, as Haag had a normal

16  gait pattern with no radiculopathy which would allow sitting with occasional standing and walking

17  as well as normal strength in lower extremities for occasionally lifting 20 lbs.  AR 867-68.

18      On October 19, 2020, Unum wrote to Haag with its conclusion that Haag was disabled

19  from August 6, 2019 through April 28, 2020.  AR 884-893.  Because of Unum's 180-day

20  elimination period, Haag was entitled to benefits from February 7, 2020 through April 28, 2020.

21  AR 885.  Unum noted that Haag had received a lumbar MRI in August 2019 which demonstrated

22  L5-S1 disc protrusion with no focal nerve root impingement or significant central canal or neural

23  foraminal stenoses findings.  AR 887.  Haag received several steroid injections without significant

24  benefit and underwent surgery on January 30, 2020 without significant change in symptoms

25  following recovery from surgery.  AR 887.  Unum noted that her complaints did not appear

26  associated with lumbar disc bulge or discectomy and that she would not be precluded from a light

27  duty occupation.  AR 887-888.

28      Haag appealed the decision and completed it for Unum's review on June 1, 2021.  AR 962-

United States District Court
Northern District of California

66, 1007-2383.

On October 26, 2020, Haag reported to her physical therapist that her piriformis was tight and painful and her lower back was aching. AR 2324. The physical therapist noted moderate to severe tension along lower back paraspinals, and superior glutes. AR 2324. The therapist also assessed severe tension in her right piriformis with spasming during tissue work. AR 2324. The physical therapist also noted severe tension along her piriformis on October 27, 2020. AR 2326. On November 5, 2020, the therapist noted decreased hesitation to take longer strides and Haag reported her piriformis had calmed down a bit and it was less painful walking. AR 2330, 2332. On November 11, 2021, Haag reported that her lower back was feeling better although her right piriformis continued to hurt. AR 2338. By November 21, 2020, however, Haag reported that her lower back was very tight and the physical therapist noted severe tension and guarding throughout her legs, especially her hamstrings. AR 2340. On December 27, 2020, the physical therapist recorded pain on Haag's right side during her gait, and that it was worse when her toe was out. AR 2345. The physical therapist documented severe neuromuscular guarding and aberrant tissue tension in the anterior aspect of the right lower quadrant. AR 2345. On December 27, 2020, Haag reported to her physical therapist that physical therapy was helping her in that she feels stronger and stretches are helpful, but that the pain can still bother her, such as when sitting too long. AR 2344. She reported that pain still rose to a 9/10 but was lessening slightly. AR 2344.

Haag completed a Functional Capacity Examination ("FCE") on January 14 and 15, 2021, conducted by Ramone De Los Reyes, Doctor of Physical Therapy. AR 1007. De Los Reyes concluded that Haag gave maximum effort. AR 1009. Haag was able to sit for a maximum of 45 minutes continuously on day 1 of testing, and 28 minutes continuously on day 2. AR 1010. On both days Haag could stand for up to 15 minutes continuously. AR 1010. Haag was limited to lifting 10 lbs. safely on both days. AR 1011. On day 2, Haag reported that her whole body felt sore like she had been hit by a bus and she reported pain levels of 8/10. AR 1012, 1013. De Los Reyes noted Haag could only twist at 40% range of motion on day 2, that she had muscle spasms during the bending exercise, and had to sit down immediately after 6 minutes of continuous standing. AR 1016-1017. De Los Reyes concluded as a result of the FCE that Haag would be

able to sit for 30 minutes continuously for up to 4 hours a day, stand for 15 minutes continuously for up to 1 hour a day, and walk for 10 minutes continuously for up to 1-and-a-half hours a day. AR 1008.

On April 19, 2021 Haag received an injection of methylprednisolone from Dr. Noritake for back pain relief.  AR 2518.

On June 21, 2021 Unum consultant Megan M. Yeaton, RN, reviewed Haag's file and concluded that the available medical records indicated she could resume occupational demands as of April 27, 2020.  AR 2392-2397.  Yeaton concluded as of that April 27, 2020 her physical exams were stable and that she could have continued physical therapy while working.  AR 2396.

On June 25, 2021, Haag received an MRI on her hip which showed a labral tear.  AR 2519.

On July 8, 2021, Unum consultant Scott Norris, M.D., reviewed Haag's file.  AR 2407-2412.  Dr. Norris found that Haag was able to perform light activity as of April 27, 2020.  AR 2411.  Dr. Norris acknowledged Haag's reported pain and symptoms, but found that limited examination and diagnostic testing/imaging findings did not support the severity of impairment reported.  AR 2411.  Based on the nature of the surgery, Dr. Norris found that a 3-month recovery period would be sufficient to resume light work activity.  AR 2411.  Dr. Norris did not have any information about Haag's labral tear when he made his assessment.

Unum provided Yeaton and Dr. Norris's opinions to Haag on July 12, 2021 for review. AR 2459.

Haag received an injection in the right hip on August 26, 2021, but reported that it did not relieve her pain.  AR 2519.

On September 2, 2021, Dr. Timothy Jackson diagnosed her with a labral tear in her right hip.  AR 2543.  On September 27, 2021, Dr. Jackson performed surgery on Haag for the labral tear.  AR 2549.  In the aftermath of the surgery she received a brace and walker.  AR 2539.  On December 7, 2021, Dr. Jackson reported Haag was doing really well, and had some pain but that it was only mild.  AR 2537.

On February 14, and 24, 2022, Haag provided materials responsive to Unum's July 12, 2021 letter, including her own declaration and documentation related to her labral tear and

resulting surgery.  AR 2514-31; 2534-53.  Her response principally addressed Dr. Norris's opinion.  AR 2515-2517.

On March 14, 2022, Unum sent Haag a letter stating that it had reviewed her additional materials, including those related to the labral tear, and concluded the decision to deny benefits as of April 27, 2020 was correct.  AR 2557-2566.  Its letter relies heavily on Dr. Norris's opinion.  AR 2557-2566.

The parties agree that Haag returned to work as a Lab Reporting Analysist for Heluna Health, working full-time as of August 2022.  ECF No. 29-1 at 15, Defendant's Statement of Material Fact No. 118.

## IV.  CONCLUSIONS OF LAW[3]

In general "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 691-92 (9th Cir. 2017).  Here, the Policy grants Unum discretionary authority to make benefit determinations.  AR 2655, 2683.  However, California Insurance Code section 10110.6(a) makes such provisions "void and unenforceable," and the Ninth Circuit has held that section 10110.6 is not preempted by ERISA.  *See Orzechowski*, 856 F.3d at 692-95.  Both sides agree the standard of review is therefore *de novo*.  ECF No. 26 at 14; ECF No. 28 at 10.

"When a district court reviews de novo a plan administrator's determination of a claimant's right to recover long term disability benefits, the claimant has the burden of proving by a preponderance of the evidence that [s]he was disabled under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-63 (9th Cir. 2016).  "Under a *de novo* standard of review, the Court performs 'an independent and thorough inspection' of the Plan administrator's

---

[3]  To the extent that any conclusions of law are inadvertently labeled as findings of fact (or vice versa), the findings and conclusions shall be considered "in [their] true light, regardless of the label that the . . . court may have placed on [them]." *Tri–Tron Int'l v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975).

decision to determine whether the Plan administrator correctly or incorrectly denied benefits." *W. v. Unum Life Ins. Co. of Am.*, No. CV 16-9527-JFW (ASX), 2018 WL 6071090, at *11 (C.D. Cal. July 3, 2018) (quoting *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006)), *aff'd*, 798 F. App'x 154 (9th Cir. 2020).

Under Unum's Policy, an employee is "disabled" when she is limited from performing the material and substantial duties of her regular occupation due to sickness or injury, and she has a 20% or more loss in indexed monthly earnings due to the same sickness or injury.[4]  AR 2660.  She is determined to be disabled from her usual occupation when she is rendered unable to perform with reasonable continuity the substantial and material acts necessary to pursue the occupation she is routinely performing for her employer in the usual and customary way.  AR 889.  If Haag was able to perform her occupation on a full-time or part-time basis but chose not to, she did not qualify for disability under the Policy.  AR 2621.

Based on review of the administrative record here, the Court finds that Haag has met her burden of showing it is more likely than not that she was unable to perform her role with "reasonable continuity" beyond April 27, 2020 based on her ongoing back pain.[5]

### A.    Subjective Symptoms and Pain

Haag reported debilitating pain starting August 2019, and was diagnosed by orthopedic surgeon Dr. Pradhan, after an August 19, 2019 MRI, with spondylosis, a disc bulge of 3.5 mm at L5-S1 disc, and early degenerative disc disease.  AR 355.  Haag engaged in physical therapy with mixed results, as well as steroid injections, before Dr. Pradhan concluded on January 3, 2020 that Haag was "getting worse," and had "exhausted all reasonable non-surgical treatment modalities, and ha[d] become a surgical candidate."  AR 1117.  Unum itself determined that she was disabled during this time period from August 6, 2019 through April 28, 2020.  AR 884-893.

Unum argues that while Haag was disabled prior to April 27, 2020, she experienced

---

[4]  After 24 months of payments, an employee is disabled when she is unable to perform the duties of any gainful occupation for which she is reasonably fitted by education, training or experience. AR 2660.

[5]  At the October 19, 2023 hearing, the parties agreed that Haag satisfied the requirement that she had a 20% or more loss in indexed monthly earnings due to the medical condition that she alleges was her disability.

improvement after surgery and could have returned to work.  ECF No. 28 at 11-12.  While the Court finds that there is evidence of some initial improvement after surgery, the Court also finds that Haag's ongoing reports of pain and symptoms make clear that she was still experiencing severe back and leg pain.  "It would be an abuse of discretion for the Court to fail to consider Plaintiff's subjective account of pain." *Boykin v. UNUM Life Ins. Co. of Am.*, No. 2:19-CV-00137-TLN-DB, 2022 WL 458213, at *18 (E.D. Cal. Feb. 15, 2022) (quoting *Kibel v. Aetna Life Ins. Co.*, 725 F. App'x 475, 477 (9th Cir. 2018) (citing *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 904–07 (9th Cir. 2016)); *Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004) (ALJ committed legal error in discounting claimant's pain testimony and opinions of physicians based on pain reports).  On whole, Haag was consistent in her reports of ongoing pain and symptoms to support that she would not have been able to substantially and materially perform the acts that she had been routinely performing at her position.

For example, on April 24, 2020, Haag reported to Dr. Manvelyan that she was having pain in her right leg, including pins and needles, and that the pain at times was a 6/10.  AR 323.  On April 27, 2020, she reported to Dr. Pradhan that her back pain was coming back on and off.  AR 126.  Haag was referred to neurologist Dr. Linane for the back pain, and Dr. Linane noted on May 20, 2020, that Haag reported her pain had decreased since surgery but had not resolved.  AR 663.  Haag reported to Dr. Linane burning pain when standing for prolonged periods, deep, aching pain down her right side, and difficulty bending over and squatting to the ground.  AR 664.  There is some documented improvement in the physical therapy notes in June 2020, but by July 8, 2020, Haag described to her physical therapist a present back pain level of 7/10.  AR 1308, 1310; *see also* AR 1316 (July 21, 2020 reporting her symptoms worsened after a week of increased activity); AR 1321 (July 28, 2020 reporting a back pain level of 7/10).  On July 31, 2020, Haag visited physical medicine and rehabilitation specialist Dr. Myers because of the ongoing pain issues and he diagnosed her with piriformis syndrome.  AR 1096-1097.  Haag initially reported pain relief as a result of a piriformis injection on August 4, 2020, but by September 18, 2020 she was reporting to her pain specialist her current level of pain was a 6/10 and within the prior month her highest level was 8/10 and lowest level was 6/10.  AR 1085-1086, 1093-1094.  On October 26, 2020,

1    Haag reported to her physical therapist that her piriformis was tight and painful and her lower back

2    was aching.  AR 2324.  On November 11, 2021, Haag reported her lower back was feeling better

3    but her right piriformis continued to hurt.  AR 2338.  By November 21, 2020, however, Haag

4    reported that her lower back was very tight.  AR 2340.  On December 27, 2020, she reported to

5    her physical therapist that physical therapy was helping her in that she feels stronger and stretches

6    are helpful, but that the pain can still bother her, such as when sitting too long.  AR 2344.  She

7    reported that the pain still rose to a 9/10 but was lessening slightly.  AR 2344.

8         Unum consultant Dr. Lyon concluded on August 19, 2020 that Haag had not reported any

9    significant change in symptoms following recovery from surgery, and Unum's initial October 19,

10   2020 letter to Haag determining that she was disabled through April 28, 2020 stated the same.  AR

11   689, 887.  Unum is not required to prove that there was improvement to Haag's condition to

12   determine not to pay further benefits, but it is reasonable to expect that there would be evidence of

13   such where Unum determined Haag was disabled for months prior to April 28, 2020.  *See Saffon*

14   *v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) ("Metlife had

15   been paying long-term disability benefits for a year, which suggests that she was already disabled.

16   In order to find her no longer disabled, one would expect the MRIs to show an *improvement*, not a

17   lack of degeneration.") (emphasis in original).  Unum seems to be recharacterizing Haag's

18   disability as a recovery from surgery.  However, its initial approval for the period starting August

19   2019 belies such a characterization.  *See Woolf v. Unum Life Ins. Co. of Am.*, No.

20   219CV07353FLAKSX, 2021 WL 4621757, at *10 n.8 (C.D. Cal. July 2, 2021) ("Unum also

21   implied Plaintiff was initially approved for LTD benefits in September 2015 not because she was

22   disabled under the terms of the Policy, but because she was awaiting spinal implant surgery.  The

23   court disagrees with this characterization as made plain in Unum's approval letter.").

24        **1.    Haag's Credibility**

25        Unum consultant Dr. Norris acknowledged Haag's reported pain and symptoms, but found

26   there was insufficient medical evidence to support the severity of her pain after April 27, 2020.

27   AR 2411.  "Given the lack of an objective test to confirm the level of pain that a person is

28   experiencing, denying a claim based on a lack of objective evidence of pain is an abuse of

United States District Court
Northern District of California

16

1   discretion."  *Backman v. Unum Life Ins. Co. of Am.*, 191 F. Supp. 3d 1053, 1069 (N.D. Cal. 2016).

2   Such a determination amounts to an implicit finding that Haag's complaints were not credible.

3   *See Demer*, 835 F.3d at 905 (reviewing doctor's finding that claimant complained of medication

4   side effects but there was no evidence of effects was "a conclusion that Mr. Demer's complaints of

5   fatigue and difficulty concentrating were not credible.").

6          This Court finds Haag credible in describing her pain and ongoing symptoms to multiple

7   providers over the relevant period of time.  Haag consistently sought medical treatment, visited

8   multiple providers referred by her physicians, engaged in multiple rounds of MRIs and testing to

9   try to make a further determination as to her pain, tried multiple medications which themselves

10   created side effects, engaged in months and months of physical therapy, all while reporting

11   ongoing pain.  These activities support that she was truthfully and actually in serious pain.  *See*

12   *Olis v. Unum Life Ins. Co. of Am.*, No. 819CV01347JVSDFM, 2020 WL 4380948, at *13 (C.D.

13   Cal. July 27, 2020) (finding plaintiff's reports of symptoms credible on a similar basis); *Sangha v.*

14   *Cigna Life Ins. Co. of New York*, 314 F. Supp. 3d 1027, 1036 (N.D. Cal. 2018) ("[T]he

15   consistency and severity of Plaintiff's complaints and her pursuit of medical treatment over time

16   support her claim of disability"); *Elam v. Anthem Life Ins. Co.*, No. 5:19-CV-04269-EJD, 2021

17   WL 4061701, at *9 (N.D. Cal. Sept. 7, 2021) ("Elam's repeated attempts to find a treatment that

18   might help her recover, including chiropractic adjustments, acupuncture, vestibular therapy,

19   medication, psychiatric care, and Botox injections . . . tend to corroborate the severity of her

20   postconcussive symptoms.").  Haag's intermittent reporting of improvements also supports her

21   credibility.  *See Hart v. Unum Life Ins. Co. of Am.*, 253 F. Supp. 3d 1053, 1074 (N.D. Cal. 2017)

22   ("Additionally, the fact that Hart advised her doctors when she was feeling better 'is unlikely

23   behavior for a person intent on overstating the severity of her ailments.'") (quoting *Reddick v.*

24   *Chater*, 157 F.3d 715, 724 (9th Cir. 1998)).

25          Further, the doctors who treated Haag did not indicate any credibility concerns.  *See Shaikh*

26   *v. Aetna Life Ins. Co.*, 445 F. Supp. 3d 1, 6 (N.D. Cal. 2020) ("As Shaikh's treating physicians had

27   a greater opportunity to know and observe him than Aetna's retained physician, Dr. Craven, they

28   had a greater opportunity to assess his credibility, and one would expect any doubts as to whether

United States District Court
Northern District of California

1    Shaikh in fact suffered the pain he alleged, or the effect thereof, would be reflected in the medical

2    records.").  Rather, Haag's treating physicians, particularly Dr. Manvelyan and Dr. Pradhan,

3    corroborate Haag's reporting of symptoms, as Dr. Manvelyan concluded that she was disabled,

4    and Dr. Pradhan stated that she should remain on disability until she completed physical therapy.

5    *See* AR 126 (Dr. Pradhan stated on April 27, 2020 that he would extend Haag's disability until she

6    finishes physical therapy); AR 736 (Dr. Manvelyan responded on August 27, 2020 stating Haag

7    "is fully disabled and completely disabled from her job.").  Dr. Manvelyan explicitly stated in a

8    letter provided for Haag's appeal that she found her to be trustworthy and that she did not believe

9    Haag ever exaggerated her impairments.  AR 1021.

10           Unum speculates that Haag's real motivation in not returning to work was not back pain,

11   but rather related to her mental health.  ECF No. 28 at 12.  The Court does not find evidence in the

12   record to support such an inference.  It is true that when Haag first reported serious pain on August

13   2, 2019, Dr. Manvelyan's notes indicate that the "off work note" she wrote was related to Haag's

14   stress.  AR 300.  However, there are no records indicating that Dr. Manvelyan ultimately

15   concluded Haag's mental stress was the true reason she could not return to work.  Additionally,

16   contemporaneous notes indicate that Haag's stress was actually increased by the inability to work,

17   not that Haag's stress was the underlying factor precluding her from doing so.  On August 12,

18   2019, Haag reported to Dr. Manvelyan that she felt guilty to call in sick because her team was

19   short staffed at the moment.  AR 301.  Haag reported that she was trying to push herself, but that

20   her pain was getting worse.  AR 301.  On October 24, 2019, Haag reported to Dr. Manvelyan that

21   she was stressed about "the pain, missing work and about her future with her job."  AR 312.  On

22   March 16, 2020, Haag reported that she was in pain and anxious and depressed about her recovery

23   setback.  AR 323.  On August 19, 2020, Dr. Manvelyan noted that Haag "needs to extend her

24   disability and she is very upset.  She states that she may need to reevaluate her career because she

25   can't do her current job due to her pain."  AR 827.  Dr. Manvelyan further noted that Haag was

26   depressed and sad, recording that "she worked very hard to get her degree and loves her job.  [S]he

27   feels frustrated that her back issue is unabling [sic] her to continue her career path.  I asked her to

28   reach out to her therapist for guidance and support."  AR 829.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Unum also cites to Haag stopping work on January 1, 2020 as evidence that she was not

2   working because of stress. ECF No. 28 at 11-12. Again, there is no indication that this was the

3   reason Haag stopped working. Rather, the evidence more reasonably suggests her back pain was

4   the motivator. Haag received a transforaminal epidural injection on October 28, 2019, and

5   resumed modified duty on November 7, 2019. AR 12, 528-529. She initially reported

6   improvement as a result of the injection, but by December 13, 2019 her symptoms had returned

7   and she received another epidural injection December 27, 2019. AR 524, 781. Dr. Pradhan

8   indicated on January 3, 2020, two days after she stopped work, that Haag was "getting worse,"

9   and had become a surgical candidate. AR 1117. This series of events supports that her back pain

10   was the underlying culprit for her cessation of the modified work schedule. The Court also notes

11   that Unum itself concluded that Haag was disabled during this time because of her back pain.

12    Unum also suggests that Haag is not credible because her certification of disability from

13   Dr. Manvelyan was done in bad faith – that she knew that Dr. Manvelyan would support her

14   application, but that Dr. Pradhan would not because of her improvement. ECF No. 30 at 3-4. This

15   argument makes little sense. Dr. Pradhan himself noted at the relevant time that he would extend

16   Haag's disability until she finished physical therapy. AR 126. Further, when Unum requested

17   information from Dr. Pradhan in August 2020, he reported that Haag "had not completed

18   prescribed post-operative physical therapy post-surgery. Patient experienced delay in treatment

19   due to COVID-19. Non-surgical follow up recommended with pain [management]. Delayed

20   healing." AR 682. Unum's characterization of Haag's reliance on Dr. Manvelyan is simply

21   conjecture. As is Unum's argument that Haag was in some way avoiding Dr. Pradhan in the

22   summer of 2020, where Dr. Manvelyan recorded on July 22, 2020 that Haag had only been able to

23   schedule an appointment with Dr. Pradhan on July 31, 2020 "[d]ue to scheduling issues in the

24   summer and also due to COVID." AR 1041.

25    Dr. Norris took note of Haag's lack of serious medications in concluding her symptoms did

26   not match the objective evidence. AR 2410-2411. As he himself noted, however, there are

27   indications of issues with medications. AR 2409. Haag was taking gabapentin around June 2020,

28   but advised Dr. Linane on June 26, 2020, that she was unable to tolerate higher doses of

gabapentin due to side effects.  AR 657.  Gabapentin appears to have produced side effects at such a severity that at a July 1, 2020 appointment Dr. Manvelyan listed the drug under "allergies."  AR 832.  In September 18, 2020, the pain specialist Virginia Mabasa noted that Haag would discuss with her psychiatrist tapering off certain medications to start Cymbalta or Savella for fibromyalgia and neuropath pain.  AR 1087. She also was prescribed pregabalin with increased dosages throughout December 2020 and February 2021.  AR 1061-1063.  On February 5, 2021 Haag reported to Dr. Manvelyan that she had switched from Elavil to Lyric but was experiencing bad tension headaches with the change.  AR 1036.  In sum, it appears that there were concerns with the interactions of Haag's medications as well as side effects.  Dr. Norris also took note of the fact that Haag did not require additional revision surgery or surgery at other lumbar levels in his assessment of her ability to work.  AR 2456.  Of course, Haag did require additional surgery on a lumbar tear, although Dr. Norris did not have that record before him, nor did Unum provide the additional records regarding Haag's lumbar tear to Dr. Norris or any other medical consultants.

Finally, while Dr. Norris concluded Haag's level of pain was not supported by the medical evidence, there is reason to understand that Haag may have been more susceptible to pain than the average person.  "[I]ndividual reactions to pain are subjective and not easily determined by reference to objective measurements."  *Saffon*, 522 F.3d at 872; *see Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured.").  Haag was diagnosed with fibromyalgia, which Dr. Manvelyan noted makes her more susceptible to pain sensitivity.  AR 1021.  Unum's own reviewing doctor, Dr. Lyon, speculated that it did not appear that Haag's complaints were associated with the lumbar disc bulge, but rather he suspected more related to her prior diagnoses of myofascial pain and fibromyalgia.  AR 689.  Haag started seeing rheumatologist Dr. Noritake in September 2020 related to her ongoing low back pain and lower extremity joint.  AR 1060-1061, 1064.  Haag's additional diagnosis of fibromyalgia likely seems a contributing factor to her reports of pain and lends credibility to the symptoms she described.

## B.    Corroborating Objective Evidence

Unum argues that even if Haag's subjective pain is to be credited, she still must produce

United States District Court
Northern District of California

evidence to support her claimed restrictions and limitations.  ECF No. 28 at 13.  For one, Haag herself identified limitations, including telling Unum on June 10, 2020 that she was unable to sit for more than 15 to 30 minutes or stand more than 10 minutes without needing to change positions, and that she had been advised not to bend or twist or lift more than five pounds.  AR 99.  Further, she has produced objective evidence supporting both her pain and her claimed limitations.  According to Dr. Manvelyan's LTD claim form dated June 1, 2020, Haag was unable to stand more than 15 minutes, bend over, stoop, or lift more than five lbs.  AR 36.  These conclusions are corroborated by the FCE completed on January 14 and 15, 2021.  AR 1007-1020.  The Court finds the FCE to be objective data supporting Haag's limitations.  The testing was conducted by Ramone De Los Reyes, Doctor of Physical Therapy (AR 1007), and provides detailed data and metrics in support of its conclusions.  On the first day of the examination Haag reported a 6/10 pain level, and by the second day she reported 8/10.  AR 1013.  On day 1 De Los Reyes recorded that Haag could only twist at 50% range of motion, and that after 2 minutes of walking Haag displayed a slight limp.  AR 1016.  By day 2 she was only displaying 40% range of motion for twisting as well as decreased step length for gait mechanics.  AR 1017.  Haag displayed guarded movement when asked to reach ankle level.  AR 1017.  She had guarded and slow movements during the spine range of motion testing.  AR 1013.  She demonstrated decreased tolerance to maintain a seated or standing posture while performing dexterity tasks on day 2.  AR 1010.  Haag was not able to sit for more than 28 minutes of day 2 of her examination.  AR 1010.  She could not stand continuously for more than 15 minutes on day 1 or day 2.  AR 1010.  Her ability to bend, twist, and squat repetitively declined on day 2 as a result of increased back pain.  AR 1010.  All of these metrics support that Haag would not have been able to stand sit, or walk frequently as required for the role.  AR 78.  Nor would she have been able to frequently twist her body as well as her neck, or often lift 11-25 lbs. and 26-50 lbs.[6]  AR 78.

---

[6]  During a "forum discussion" on June 19, 2020, Unum's representatives determined that Haag's position met the light duty requirements.  AR 233-234.  However, the job description provided by Huntington Hospital indicates that Haag's particular position was at least somewhat more demanding than a "light duty" occupation, particularly in that it contained frequent walking and standing rather than occasional.  *Compare* AR 78 (describing Haag's position at Huntington Hospital), *with* AR 234 (making a light duty occupation determination and describing what light

United States District Court
Northern District of California

Dr. Norris concluded that the FCE was not time-relevant because it took place 8 months after the effective case closure date.  AR 2410.  While perhaps the testing is somewhat less relevant based on the lapse in time, the Court nonetheless gives it some weight, as it corroborates Haag's self-reporting at the time of the case closure as well as Dr. Manvelyan's notations in the LTD claim form.  *See Boykin*, 2022 WL 458213, at *17 (finding FCE findings supportive of disability were entitled to some weight even though completed 14 months after the relevant period because they were consistent with the treating doctor's opinion regarding plaintiff's ability to sit, stand, and lift more than 30 lbs.).  Dr. Norris also noted that the weakness and gait notations in the FCE were inconsistent with notations by treating providers.  AR 2410.  However, the Court does not consider the FCE findings inconsistent, as the FCE testing was done over the course of two days rather than during a shorter doctor's appointment visit.  For example, on day 1 of testing De Los Reyes reported that after 2 minutes of walking Haag displayed a slight limp.  AR 1016.  It is true that Dr. Linane reported a normal gait in May and June 2020, but there is no indication that she was observing Haag for a prolonged period.  AR 658, 661, 664.  Similarly, while Dr. Norris took note that the cardiologist recorded on March 23, 2021 that Haag walks for exercise and does not report issues related to walking (AR 2456, 1052), the record reflects that Haag reported to Dr. Noritake on February 12, 2021 that she tires easily and had not been able to exercise to any significant degree.  AR 1062.  Additionally, the Court does not consider Haag's cardiologist reporting that she does not have issues related to walking to be inconsistent with back pain restricting her walking.  *See Lyttle v. United of Omaha Life Ins. Co.*, 341 F. Supp. 3d 1071, 1084 (N.D. Cal. 2018) ("United notes that in November 2015, Dr. Kim indicates Lyttle was 'stable,' but an oncologist noting that Lyttle was 'stable' does not necessarily indicate that his pain was being adequately managed for the long term (as opposed to, say, that his liver cancer was stable because

duty entails).  This discrepancy was noted during the forum discussion, where it was stated, "[i]t appears that the job is heavier than the occupation."  AR 234.  The Court concludes that the appropriate accounting of Haag's duties is the Huntington Hospital description (i.e., AR 78) and uses this description of duties in making its determination.  *See* AR 890 ("we will evaluate your usual occupation to be the 'occupation you are routinely performing for your Employer when your disability begins.'"); *Rodden v. Jefferson Pilot Fin. Ins. Co.*, 591 F. Supp. 2d 1113, 1124 (N.D. Cal. 2008) (concluding under the plain language of the plan, defendant could not solely refer to how the position of "office manager" might be performed in the national economy).

of treatment with Sorafenib).").

There is other objective evidence to support Haag's subjective reports of pain and limitations. Dr. Manvelyan recorded objective assessments of Haag's symptoms and limitations. *See* AR 833 (July 1, 2020 recording tenderness of the occipital muscles with spasms, tenderness of the lower right paraspinal muscles and the right buttocks area, positive SRL, limited bending of the lower spine); AR 827-829 (August 19, 2020, recording limited range of motion, stiffness, pain radiating to her right hip area, calf pain, leg weakness (mid right lower leg) muscle cramps, tenderness of the lower right paraspinal muscles and the right buttocks areas, positive SRL, and limited bending of the lower spine). Dr. Myers noted on July 31, 2020 "exquisite sciatic notch / piriformis" and diagnosed Haag with piriformis syndrome. AR 1096-1097. Haag's physical therapist, particularly in fall 2020, recorded numerous objective observations of symptoms. *See* AR 2317 (October 2, 2020, documenting "severe tension" on Haag's right side as well as pain on her right side during gait observations); AR 2324 (October 26, 2020, assessing moderate to severe tension along lower back paraspinals and superior glutes and severe tension in the right piriformis with spasming during tissue work); AR 2326 (October 27, 2020, noting severe tension along her piriformis); AR 2340 (November 21, 2020, documenting severe tension and guarding throughout legs, especially hamstrings); AR 2345 (December 27, 2020, noting pain on Haag's right side during gait, worse when toe out, severe neuromuscular guarding and aberrant tissue tension in the anterior aspect of the right lower quadrant). Haag received an MRI on her hip on June 25, 2021, and was thereafter diagnosed with a labral tear in her right hip. AR 2519, 2536.

Unum casts Haag's diagnoses of piriformis syndrome and labral tear as incidents and diagnoses separate from Haag's back pain recovery in April 2020. ECF No. 30 at 7. Given the reporting of back and leg pain and symptoms throughout the relevant period, however, the Court finds more accurate that Haag was consistently limited in her ability to perform the tasks necessary for her position and was in search of answers which were intermittently provided. In sum, the Court finds objective evidence supports Haag's characterization of her pain and limitations in her ability to work at her Huntington Hospital position.

**C.      Work History**

Unum argues that Haag had a prior history of back pain, including starting in fall 2018, but was still able to perform her job then and thus would have been able to perform her job after April 27, 2020.  ECF No. 28 at 11.  Records from spring 2019 indicate that her pain was not as severe as it later became, as she reported to her physical therapist at the time that she was at a 4/10 level of pain.  AR 1941.  She also indicated that when the pain became particularly difficult – she noted that it could get up to a 7/10 or 8/10 – she would need to call off work.  AR 1941.  Such reporting does not contradict Haag's argument that she was unable to work after April 27, 2020.  Although occasionally she reported lower pain levels, she consistently reported a 7/10 pain level throughout summer and fall 2020.  AR 1096, 1276, 1310, 1321, 1332, 2316, 2322, 2334, 2338.

Nor does the Court find Haag's brief period of modified work in November and December 2020, or her return to work in August 2022, to be evidence that she could have worked during the relevant time period as Unum argues.  ECF No. 28 at 11-12.  As discussed above, the medical evidence indicates that in November and December 2020 that Haag was experiencing severe symptoms and ultimately was recommended surgery.  As to August 2022, Haag's return to employment occurred three years after she initially stopped work in August 2019, and just under two years after the initial determination that she would not receive ongoing benefits.  She was seeing doctors and physical therapists and reporting pain throughout this period.  Further, she reported stress at the prospect of having to leave her professional field because of her inability to work.  *See* AR 827, 829.  This work history does not support that Haag could have worked after April 27, 2020.

**D.      Treating Physician's Opinions**

The Court also determines that Dr. Pradhan and Dr. Manvelyan's opinions that Haag's disability be extended beyond April 27, 2020 should be afforded some weight.  "While deference is not necessarily owed to treating physicians in ERISA cases, conclusions drawn at the end of in-person medical examinations are inherently more helpful because the treating physician observes and interacts with the patient for several minutes at a time."  *Filarsky v. Life Ins. Co. of N. Am.*, 391 F. Supp. 3d 928, 942 (N.D. Cal. 2019).  "The credibility of physicians' opinions turns not

United States District Court
Northern District of California

only on whether they report subjective complaints or objective medical evidence of disability, but on (1) the extent of the patient's treatment history, (2) the doctor's specialization or lack thereof, and (3) how much detail the doctor provides supporting his or her conclusions." *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015). While Unum need not "accord special weight to the opinions of a claimant's physician," it cannot "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). At the same time, "[c]ourts have typically afforded greater weight to the opinions of physicians who have treated the claimant for an allegedly disabling condition for a long period of time," and to "doctors whose specialty relates to the alleged disability." *Shaw*, 144 F. Supp. 3d at 1129–30 (collecting cases).

While Dr. Pradhan's note that Haag's disability should have been extended until she completed physical therapy does not provide perhaps the most detailed of analyses, the Court nonetheless countenances his opinion as he treated Haag for nearly a year, specialized in orthopedics, and had the opportunity to observe and interact with Haag whereas Unum's reviewing physicians were only engaging in a paper review of her file. *See Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1254 (N.D. Cal. 2014) ("While an ERISA plan administrator need not provide in-person medical evaluations of its claimants, Simonelic's in-person observations are more persuasive than Goldman's paper review."); *Meyer v. Unum Life Ins. Co. of Am.*, No. 819CV01725JLSADS, 2021 WL 1102443, at *15 (C.D. Cal. Mar. 23, 2021) ("The Court may give greater weight to a treating physician's opinion where it is evident a particular physician has had 'a greater opportunity to know and observe the patient than a physician retained by the plan administrator' who conducts a file review." (quoting *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003))).

As to Dr. Manvelyan, the Court does not find her opinion wholly persuasive as she lacks specialization in pain management or orthopedics, but the Court does give some weight to her assessment of disability based on her extensive treatment history with Haag going back to 2015. AR 1021. Further, she was able to see Haag and recorded assessments of Haag's condition over

multiple visits which lends credence to her conclusion regarding disability.  *See* AR 833 (July 1, 2020 appointment recording tenderness of the occipital muscles with spasms, as well as tenderness of the lower right paraspinal muscles and the right buttocks area, positive SRL, limited bending of the lower spine); AR 827, 829 (August 19, 2020 appointment recording limited range of motion, stiffness, tenderness of the lower right paraspinal muscles and the right buttocks area, positive SRL, limited bending of the lower spine, back pain, calf pain, leg weakness (mid right lower leg) and muscle cramps); AR 1035,[7] 1037 (February 5, 2021 and March 17, 2021 appointments recording back pain, calf pain, leg weakness (mild right lower leg) and muscle cramps); *see also Gonzalez-Schultz v. Unum Life Ins. Co. of Am.*, No. CV 20-6837-RSWL-JCX, 2022 WL 17839054, at *12 (C.D. Cal. Nov. 16, 2022) ("[W]hile Dr. Cardenas's notes to Defendant commenting that Plaintiff is disabled do not extensively elaborate on Plaintiff's condition, years of treatment records detailing Plaintiff's symptoms lend support to Dr. Cardenas's ultimate determination.").

The Court notes that Unum's reviewers, Dr. Norris, Dr. Lyon, and Dr. Milos, disagreed with the conclusion that Haag was disabled beyond April 27, 2020, however, "courts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file, especially when they are employed by the insurer." *Backman*, 191 F. Supp. 3d at 1066.  Further, as detailed above, the Court disagrees more specifically with some of their analyses, particularly as to Dr. Norris, based on its own examination of the record.

In sum, the Court finds Haag has produced evidence showing that it is more likely than not that she was disabled within the meaning of the Policy from April 28, 2020 through December 7, 2021.

**E.      Post-December 2021**

However, based on Haag's own characterization and the records available, there is no

---

[7] Similar to the issue described in footnote 2, some of the entries concerning the March 17, 2021 encounter are dated April 14, 2021.  Due to the organization of the document and the absence of a record that there was an April 14, 2021 appointment, the Court does not consider the April 14, 2021 date on some entries to be a statement about the dates physical assessments or exams were completed.  Rather, the Court instead understands the information to reflect notes and findings registered on the date of the encounter itself, meaning March 17, 2021.

indication that she was disabled after December 7, 2021.  Haag's motion for judgment under Rule 52(a) puts forth that the true cause of her pain was the labral tear, which was surgically corrected on September 27, 2021.  *See, e.g.*, ECF No. 26 at 1; AR 2539.  She initially received a brace and walker, and on November 9, 2021, she reported that she was in physical therapy.  AR 2538-2539. On December 7, 2021, Dr. Jackson reported Haag was doing really well, and had some pain but that it was only mild.  AR 2537.  Haag herself does not indicate in her declaration dated February 11, 2022, that she had any pain at that point.  AR 2519.  Further, she returned to work as a Lab Reporting Analyst for Heluna Health as of August 2022.  ECF No. 29-1 at 15, Defendant's Statement of Material Fact No. 118.  On whole, there is no evidence to indicate that Haag was disabled under the terms of the Policy after December 7, 2021.  *See Elam*, 2021 WL 4061701, at *8 (finding sufficient evidence in the administrative record to find by a preponderance of evidence that plaintiff was disabled through July 4, 2017, but not thereafter).

## V.  CONCLUSION

For the reasons stated above, the parties' respective motions are **GRANTED IN PART and DENIED IN PART**.  The Court finds that for the period April 27, 2020 through December 7, 2021, the preponderance of the evidence in the administrative record shows Haag was disabled under the terms of the Policy.  The administrative record fails to establish by a preponderance of evidence that Haag was disabled after December 7, 2021.  The parties shall meet and confer and submit a stipulated proposed judgment in accordance with this Order no later than 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated:  October 20, 2023

THOMAS S. HIXSON
United States Magistrate Judge